## D. KANEALII *v.* JACOB HARDY, CIRCUIT JUDGE OF THE FIFTH CIRCUIT.

ORIGINAL.

ARGUED SEPTEMBER 12, 1905. DECIDED SEPTEMBER 19, 1905.

FREAR, C.J., AND CIRCUIT JUDGES DE BOLT AND LINDSAY IN PLACE OF HARTWELL AND WILDER, JJ.

PROHIBITION—*circuit judge has jurisdiction in quo warranto even though prayer for relief may be too broad.*

A circuit judge is not without jurisdiction of a quo warranto proceeding merely because the petition prays for putting the relator in office as well as for ousting the respondent, even if the statute permits only a judgment of ouster.

Quo Warranto—*jurisdiction of circuit judges over election questions under county act.*

> ·Under the county act (L. 1905, Act 39) the original jurisdiction of the supreme court in election contests is confined to certain classes of questions, and even if it is exclusive as to those it does not exclude jurisdiction of circuit judges over other questions in quo warranto proceedings.

Counties are corporations—*within meaning of quo warranto statute.*

> Counties, which are naturally quasi corporations and by the county act are made bodies corporate and politic and permitted to sue and be sued in their corporate names, are corporations within the meaning of the quo warranto statute, although they may not be within the meaning of all statutes.

### . OPINION OF THE COURT BY FREAR, C. J.

This is a petition for a writ of prohibition to restrain the respondent, as circuit judge, from taking further action in a quo warranto proceeding instituted before him to oust the petitioner herein from the office of supervisor of the county of Kauai and to put in possession of such office the relator therein, C. H. Willis, upon the ground that the petitioner herein, although he received a majority of the votes cast for such office, was not entitled to the same because, as it was alleged, his nomination papers were fraudulent and forged, and that the relator therein was entitled to the office inasmuch as he had received votes for the same and was the only other candidate. The contention is that the circuit judge is without jurisdiction of the quo warranto proceedings.

A minor ground relied upon to show that the judge is without jurisdiction is that under the statute (Rev. L. Secs. 2044-2052) relating to quo warranto, judgment, if unfavorable to the respondent, can be rendered only to oust him from the office and cannot be rendered also to put the relator in office. If such is the case, it would not affect the jurisdiction of the circuit judge to entertain the quo warranto proceedings in so far at least as the title of the respondent therein to the office is concerned.

One of the principal grounds relied on is that under sections

40-50, comprising chapter 11, entitled "Contests," and section 59 of chapter 12, entitled "First Election," of Act 39 of the Laws of 1905, known as the County Act, the supreme court has exclusive jurisdiction of the questions involved in the quo warranto proceedings. The sections particularly applicable are the following:

"Section 40. All questions as to the validity of any ballot cast at any election held hereunder shall be decided immediately and the opinion of the majority of the Board of Inspectors of Elections at each polling precinct shall be final and binding, subject to revision by the Supreme Court of the Territory as hereinafter provided."

"Section 41. Any candidate directly interested, or any thirty duly qualified voters of any election district, may file a petition in the Supreme Court of the Territory setting forth any cause or causes why the decision of any Board of Inspectors should be reversed, corrected or changed."

"Section 46. At the hearing, the Court shall cause the evidence to be reduced to writing and shall give judgment, stating all findings of facts or law. Such judgment may invalidate the election on the grounds that a correct result cannot be ascertained because of a mistake or fraud on the part of the Inspectors of Election; or decide that a certain candidate, or certain candidates, received a majority or plurality of the votes cast and were elected. If such judgment should be that the election was invalid, a certified copy thereof shall be filed with the Governor of the Territory or the Board of Supervisors, as the case may be, and he or they shall call a new election within sixty days after filing such judgment; and if the Court shall decide which candidate or candidates have been elected a copy of such judgment shall be served on the Secretary of the Territory or the County Clerk, as the case may be, and the officer herein thereto authorized to deliver certificates of election shall sign and deliver to such candidate or candidates certificates of election, and the same shall be conclusive of the right of the candidate or candidates to the office."

"Section 47. The decision of the Court concerning any question properly involved in any such petition and proceeding shall be final and binding upon all parties."

Whether special jurisdiction given by statute in election matters is exclusive or not is a question upon which there is some

conflict of authority. Perhaps the prevailing view is that it is not exclusive unless an intention is shown to make it so, as, for instance, in *Re Contested Election*, 15 Haw. 323, in which it was held that each house of the legislature was sole judge of the elections, returns and qualifications of its own members, and that the provisions of law which had previously conferred such jurisdiction exclusively upon the supreme court had been repealed by the Organic Act of the Territory. It may well be that the jurisdiction of the supreme court is exclusive as far as it goes and that the circuit judge has no concurrent jurisdiction of questions that might be decided under the sections of the statute above referred to, but in our opinion the jurisdiction so conferred upon the supreme court is limited to certain classes of questions and the jurisdiction which circuit judges might otherwise have in quo warranto proceedings over other questions arising under the election laws is not excluded. Under section 40, above quoted, questions as to the validity of any ballot are to be decided finally and conclusively by the board of inspectors, subject only to revision by the supreme court. The board could not go back of the question of the validity of a ballot and inquire into the question of the validity of a nomination. See case between the same parties, ante p. 1. And likewise the supreme court, in revising any such decision of a board of inspectors, could not consider questions which the board itself could not consider. Section 41 limits the petition for such revision to causes for reversing, correcting or changing the decision of the board. Section 46 permits judgment of invalidation only upon the ground of a mistake or fraud on the part of the inspectors, and a judgment of the election of a candidate only upon the ground that he has received a majority or plurality of the votes cast. Section 47 provides that the decision of the court shall be final and binding only as to questions properly involved in "such petition and proceeding." It is true that the latter part of section 46 provides that a certificate of election issued in pursuance of a judgment of the court shall be conclusive of the right of the candidate to the office. That language is, no doubt,

exceedingly broad and not easily reconcilable with the other provisions of the statute, and yet all parts of the act must be construed together and in case of apparent conflict it seems to us that the provisions of the rest of the statute are so plain that they should control, in which case the clause in question should be construed as meaning that the certificate would be conclusive as to any questions of which the court had jurisdiction in the proceedings in which judgment was rendered. It could hardly have been intended to make the judgment conclusive as to other questions. For instance, it presumably was not intended that the judgment of the supreme court upon a question of the validity of ballots, if favorable to a particular candidate, should conclusively establish his right to the office, even though, contrary to the provisions of section 17 of the County Act, he should not be a citizen of the United States or of the Territory, or a duly qualified elector of the Territory or the county, or, in the case of a county attorney, a duly licensed attorney admitted to practice in the supreme court, or even though, contrary to section 18 of the Organic Act, over which the legislature has no control, he was an idiot or insane person or had been convicted of a criminal offense punishable by imprisonment for a term exceeding one year. This view is strengthened by a comparison of the sections of the statute in question with the former statutory provisions from which they were obviously adapted, namely, section 109 of the Rules and Regulations for Holding Elections (Civ. L. p. 821; see also Rev. L. Sec. 95), and sections 8-15 of Act 8 of the Laws of the Republic (Civ. L. Secs. 1092-1099). Under the former provisions the petition might be grounded, not merely upon a cause why the decision of the inspectors should be changed, but upon any cause "why an election shall be declared void, or a seat in the legislature vacant, or the decision of any board of inspectors, or the marshal or any sheriff, reversed or changed." The petitions are also referred to as "contesting the validity of any election." It is clear that the framers of the present statute intended to limit materially the

questions over which the supreme court should have original jurisdiction in election matters.

The only other contention upon which the petitioner relies to any great extent to show that the circuit judge is without jurisdiction in the quo warranto proceeding is that under the statute of quo warranto above referred to, except as modified by section 1574 of the Revised Laws, which is not applicable to the present case, such proceeding lies against a person who claims or usurps an office in a private corporation only, or against individuals acting as a private corporation without being legally incorporated, and does not extend to officers of counties, which may be classed as quasi corporations. The distinction is pointed out between municipal corporations proper and quasi municipal corporations, such as counties, which are merely agencies or instrumentalities of the general government,—a distinction recognized in *Coffield v. Territory,* 13 Haw. 478—and it is contended that officers of quasi corporations are not within the quo warranto statute just as officers of the general government are not, as held in *Brown v. Spencer,* 8 Haw. 542. The case last mentioned held that the statute of quo warranto confined the issuing of the writ to corporations and officers of corporations and was not applicable to individual officers of the general government, but that case contained nothing to indicate that the statute was confined to private corporations. In *Thomas v. Norton,* however, at page 67 of the same volume, Mr. Justice Bickerton in an opinion based upon a different ground, which was sustained by the full court, seemed to intimate that if the Honolulu fire department was a quasi corporation it would be within the quo warranto statute, but there was no decision to that effect. The statute now in question defines the writ as one, among other things, "directed to a person who claims or usurps an office in a corporation," and provides that it may be granted also "against individuals acting as a corporation, without being legally incorporated, and against any corporate body offending against the provisions of any law relating to such corporation," etc. Secs. 2044, 2045. These sections contain no words to indicate that

private corporations alone, as distinguished from municipal or quasi municipal corporations, are intended. The remaining sections are also in general as applicable to one class as to the other class of corporations, excepting, perhaps, section 2048, the last clause of which might be considered as more appropriate to private corporations. That section provides that if the respondent does not answer within the time allowed the judge shall declare him not qualified, etc., and "shall direct the corporation to proceed to a new appointment," but even this clause might be as applicable to municipal corporations under some circumstances as to private corporations under most circumstances. In either case "appointment" would probably have to be construed as including "election." In so far as this clause might be inapplicable to either class of corporations it would simply have no effect. The statute as a whole would be applied only so far as applicable in each instance. It may be also that the legislature did not have in mind counties, or even municipal corporations proper, at the time of the original enactment of this statute in 1876, for there were no counties or municipal corporations proper in existence at that time, but if the statute is broad enough to include such corporations there is no conclusive reason why it should not apply to them when they are brought into existence. There may possibly have been some quasi municipal corporations at that time, and the section of the general corporation law (Civ. Code, Sec. 1442; see Rev. L. Sec. 2542) which conferred power on the minister of the interior to grant charters seemed to imply that municipal corporations might be included under "corporations" unless specially excepted, for that section closes with the clause, "banking or municipal corporations alone, excepted, which shall be chartered only by the legislature." Municipal corporations, as well as private corporations, are within the letter of the law, but are they within the spirit or intent of the law or is there any rule of construction which would require us to hold that they are not within the law unless specially named or brought within the law by clear implication? It is sometimes held, as in *Bowler v. Board of Immigration,*

7 Haw. 715, that the general government or boards or persons acting on behalf of it and not in their personal capacity are not within statutes of certain kinds unless that is clearly intended. Perhaps a majority of the cases hold that municipal corporations, or at least quasi municipal corporations, are not within laws relating to attachment and garnishment unless such an intent is clearly manifested. For example, in *Cedar County v. Johnson,* 50 Mo. 225, it was held that a county was not included under the word "person" in the attachment law, notwithstanding a general provision in the law upon the construction of statutes that the term "party or person" should include bodies politic, a provision somewhat similar to that found in section 16 of our Revised Laws which provides that the word "person" and other words importing persons "signify not only persons, but corporations, societies, communities, assemblies, inhabitants of a district, or neighborhood, or persons known or unknown, and the public generally, when it appears, from the subject matter, the sense and the connection in which such words are used, that such construction is intended." The court, in the Missouri case, held that counties and townships were not included in the term "bodies corporate." Similar views were held in the following three cases cited by the petitioner: In *Stermer v. La Plata County,* 5 Colo. App. 379, it was held that a garnishment statute did not apply to a county, although it provided that the word "person" extended to "bodies politic and corporate," and the county act provided that each county should be a "body corporate and politic" and as such empowered to "sue and be sued." In *McDougall v. Supervisors,* 4 Minn. 184, it was held that counties were not liable under a garnishment statute relating to "corporations." In *State v. Tyler,* 14 Wash. 495, it was held that counties were not within a garnishment statute, although they were authorized to be sued, and although the act relating to garnishment extended to corporations. A considerable number of courts, however, hold that even under attachment and garnishment statutes municipal corporations and even counties are included. In *Adams v. Tyler,* 121 Mass. 380, it was held that

a county was included under a garnishment statute which related to any "person or corporation" where the county act also provided that each county should "continue a body politic and corporate for the following purposes: to sue and be sued," etc. In *Whidden v. Drake,* 5 N. H. 13, it was held that towns were within a garnishment statute which related to "any corporation or body politic" although, as the court stated, the terms of the statute were "such as are commonly used to denote persons who conduct the affairs of private corporations, and some of them are exclusively appropriate to denote such persons." In *Bray v. Wallingford,* 20 Conn. 416, it was held that towns were included under the word "person" in a garnishment statute. In *Wilson v. Lewis,* 10 R. I. 385, it was held that a city was within a garnishment statute relating to bodies corporate when the inhabitants of every town and city were also declared to be "a body corporate." Special reasons of public inconvenience are often set forth in support of the view that counties and municipal corporations proper should not be construed as included under attachment and garnishment statutes except by clear expression or implication, but such reasons have been repudiated with much force by other courts and text writers whose opinions are entitled to great respect. Whatever weight should be given to them so far as attachment and garnishment proceedings are concerned, they have little or no application to quo warranto proceedings. Such proceedings are indeed peculiarly appropriate to officers of such corporations, and the County Act itself provides not only (in Sec. 9, subd. 1) that each county shall have power "to sue and be sued in its corporate name" but (in subd. 8) that each county shall, for the purposes and objects of the act, be "a body corporate and politic." In our opinion these bodies corporate and politic are included under the term "corporation" in the quo warranto statute. It would seem that this statute should be amended so as to include also officers of the general government and thus obviate the difficulty found in *Brown v. Spencer, supra.*

It is perhaps not altogether clear whether the petition in the

quo warranto proceeding shows that the respondent therein is in possession of the office so as to be ousted in those proceedings if they should. conclude against him, but perhaps the allegations of the petition are sufficient upon this point, or, if not, they may be subject to amendment and ought not to be made the basis of granting the writ on the ground that the circuit judge is entirely without jurisdiction.

We understand also that the ground upon which the quo warranto proceedings are based is not that the respondent therein should be ousted as disqualified from holding the office under section 18 of the Organic Act, which disqualifies one who has been convicted of a criminal offense punishable by imprisonment for a term exceeding one year. The respondent has not yet been so convicted and the mere commission of an offense without conviction is not a disqualification. Perhaps, even if it were, the circuit judge could not pass upon that question until after conviction by a jury. See *State v. Humphreys,* 74 Tex. 466; 5 L. R. A. 217, and the cases there cited. See, however, *Commonwealth v. Allen,* 70 Pa. St. 465. The question of disqualification to hold office is not involved in the quo warranto proceeding. The cause relied on for ousting the respondent in that proceeding is that he was not duly nominated because his papers were fraudulent, the ground of the alleged fraud being that the signatures to the nominating papers were forged. Moreover, the allegation in the petition for the writ of quo warranto is not that the respondent therein committed the forgery but that the nomination papers were fraudulent and forged, and that the persons, whose names appear on the nominating petition, never signed their names thereto nor authorized any other person to sign their names thereto, and that the respondent therein, or some person on his behalf, fraudulently deposited said nomination papers with the secretary of Hawaii and fraudulently induced the secretary to place said respondent's name upon the official ballot as candidate for supervisor. We do not feel called upon at present to define the extent to which the circuit judge may go into the question of the alleged forgery of the nomina-

tion papers or what the result would be if he should find that some or all of the signatures thereto were forged, nor have counsel presented this question.

A peremptory writ is denied and the temporary writ is dissolved.

*W. S. Edings* for petitioner.

*John D. Willard* for respondent.