(No. 2752. Feb. 28, 1924.)

OWEN v. THOMPSON et al.

SYLLABUS BY THE COURT.

1. It is not a reversible error to set a case for trial before the issues are made up, where it is not tried at the

time or place fixed, but is actually tried at a later time and different place without objection.

2.   A motion for continuance of a case, which is not verified, and which fails to set forth any diligence in ascertaining the whereabouts of an absent witness or any effort to secure his presence at the trial or his testimony by deposition, is insufficient.

3.   The amended complaint and proof of the plaintiff examined and held no variance exists between them.

4.   The general rule in equity is that the time fixed for performance is not regarded as of the essence of a contract, unless the parties have expressly treated it so in the language used by them, or unless it necessarily follows and must be implied from the nature of the contract and the circumstances surrounding . it.

5.   Evidence reviewed and **held** that the trial court was warranted in finding that the defendants had failed to establish the necessary elements of their counterclaim.

Appeal from District Court, Lincoln County; Ed. Mechem, Judge.

Action by Robert L. Owen against L. E. Thompson and others. From a decree for plaintiff, defendants appeal. Affirmed.

Marron & Wood, of Albuquerque, for appellants.

Geo. W. Prichard, of Santa Fé, W. C. Merchant, of Carrizozo, and W. P. Harris, of Vaughn, for appellee.

OPINION OF THE COURT.

BRATTON, J.   We shall refer to the parties as plaintiff and defendants, as they were denominated in the court below.

This action was instituted by Robert L. Owen against the Thompson Sheep Company, a copartnership composed of L. E. Thompson, John Gilillour, Juan Errasmuspe, Jean Gonzales, and Miguel Nalda, to recover the sum of $10,000, with certain interest thereon, for labor performed by the plaintiff in drilling a certain well upon the premises of the defendants in accordance with a certain written agreement entered into between them on January 28, 1919, by

which it was expressly provided that the plaintiff should continue to drill said well, which was then down to about 600 · feet in depth. The price to be paid, according to the terms of said contract, was to be determined by the flow of water obtained. If it tested 5 gallons or more per minute, the price should be $10,000; if 4 gallons or more, and less than 5 gallons, $9,000; if 3 gallons or more, and less than 4 gallons, $8,000; if 2 gallons or more, and less than 3 gallons $7,000; and if 1½ gallons or more, and less than 2 gallons per minute, $5,000. The sums so found to be due was to be settled by a note due November 10, 1923, to be secured by a lien on such well and the premises adjacent thereto. It was further provided that the plaintiff should have until August 31, 1920, within which to perform his part of the contract, if that length of time was required. And it was further provided that, should the well then in progress fail to produce from 1½ to 5 gallons of water per minute, the plaintiff should have the privilege of sinking another well or other wells on some other part of the premises belonging to the defendants and situated adjacent to the location of said well then being drilled. Plaintiff charged that he had performed all of the conditions required of him under the terms of such contract; that he continued to drill and sink said well, and that before August 31, 1920, be obtained water which afterwards tested in excess of 5 gallons per minute; that the defendants failed to perform their part of said contract by failing and refusing to accept said well and execute the note provided in the contract, and had advised the plaintiff they would refuse to execute said note or otherwise pay the plaintiff as required by such contract. Judgment for $10,000, with interest and costs of suit, together with the establishment and foreclosure of a lien upon said well and the adjacent premises was prayed.

The defendants filed a motion to make more definite and certain, wherein they sought to have the court require the plaintiff to make his complaint more

definite and certain, by setting forth the exact date on which the well in question was completed and ready to be tested with a proper pumping machine; that he state whether or not said well was finished and in condition to be tested on or before August 31, 1920; that he state when and to whom he gave notice that it was complete and ready to be tested, and when the actual test was made. After permitting the plaintiff to amend his complaint by interlineation, this motion was denied. On April 25, 1921, a demurrer was lodged against said amended complaint, upon the grounds that it failed to affirmatively show that the plaintiff had fully performed all of the conditions required of him by said contract, in that it failed to show that said well was completed and produced, or was capable of producing, any quantity of water prior to August 31, 1920, and that it affirmatively appeared from the face of the said complaint that the well was tested subsequent to said date, and that it failed to show that the defendants were notified that said well was completed and ready for a test prior to August 31, 1920. At the same time this demurrer was filed, a motion was interposed, renewing and asking the court to reconsider the motion to make more definite and certain. The demurrer and motion were denied by an order duly made on April 25th, and the defendants were ordered to answer the amended complaint on or before May 2d, and the case was set for trial at the opening of the regular term of court to begin on May 6th; to all of which the defendants duly excepted.

The defendants filed their answer on May 2d, in which they admitted the execution of the contract sued upon and denied the remaining allegations contained in the complaint. They further pleaded that on August 31, 1918, they purchased from the plaintiff certain sheep grazing outfit, and leases upon certain lands situated in Lincoln county, near to and surrounding the location of the well referred to; that they were to and did receive the sheep during January, 1919, and thereby completed their original

contract, except that portion which referred to the plaintiff completing the well in question, and that they thereupon executed the subsequent agreement, being the one sued upon by the plaintiff; that at all of said times the country surrounding said well was without living water other than that produced from wells, and that the only other source of water for grazing live stock was lakes or tanks which caught and held surface water; that it was unsafe to rely upon such lakes or tanks exclusively, and it was therefore necessary to provide water from wells drilled to a depth of about 800 feet in order to make such ranges safe for grazing live stock and particularly sheep; that the plaintiff did not proceed diligently with drilling said well, but carelessly and negligently proceeded in a desultory manner, abandoning such work for periods of time, and did not complete said well within the time specified, or within any reason- able time thereafter; that he first advised the defend- ants on October 20, 1920, that he claimed said well was completed; that in the meantime the drought ex- isting in said country became so acute that it was necessary for the defendants to, and they did, pur- chase a half interest in another well in order to provide water for their herds of sheep.

By way of counterclaim, the defendants pleaded most of the facts hereinbefore set forth, and further that, in order to induce the defendants to enter into the original contract for the purchase of said ranch and sheep, the plaintiff told and represented to them that he controlled the entire range in question; that no other persons had water thereon which would enable them to use such range for grazing purposes, and that, if defendants purchased said lands and water, together with the well then being drilled, they would secure control of all of such range; that such statements and representations were false and were known by the plaintiff to be so; that at said time there was another well owned by other persons in the midst of said range, known as the Waller and Billings well, which would give to the owners thereof equal rights with defendants

to graze thereon; that the defendants did not know of such facts, but relied and acted upon the false and fraudulent representations of the plaintiff. They prayed damages in the sum of $14,000.

On May 2d, at the time said answer was filed, the defendants filed an unverified motion to vacate the previous order setting the case for trial on May 6th, and to continue the case for the term. Several grounds were put forward in such motion. These were that the case was not at issue upon the affirmative matters and counterclaims set forth by the defendants; that the defendants L. E. Thompson and John Gilillour were necessary witnesses in behalf of defendants, and that they were then busily engaged in personally looking after their herd of sheep, consisting of about 5,000 head; that the lambing season was then in progress, and they could not leave said herds and attend the trial of the case without great and irreparable injury and perhaps ruinous loss and damage in the loss of sheep and lambs, and further that they would need one Tipton as a material witness; that said witness had left the state and his exact whereabouts was then unknown, but that he could be found and would be in attendance at the next term of the court to personally testify to certain facts set forth in such motion. On May 2d, this motion was denied, and the case was set for trial on May 24th. A jury was waived, and the cause was tried before the court beginning on June 7, 1921. Judgment was rendered in plaintiff's favor for the full amount sued for, with the establishment and foreclosure of a lien as prayed, and the defendants were denied any relief upon their counterclaims. From such judgment, this appeal has been perfected, and 61 assignments of error presented. It is not necessary to discuss all of them.

[1] 1. It is urged by the defendants at the outset that the court erred in its order made April 25th, setting the case for trial at the opening of the regular term of court in Lincoln county, beginning May 6th, and in failing to afterwards sustain their motion to

vacate such order and continue the case for the term. It is asserted that by such action, they were forced into trial without sufficient time within which to prepare therefor. Much is said by counsel for defendants with reference to section 4196, Code 1915, as decisive of this question. A consideration of the statute is altogether unnecessary. Had the case been tried in Lincoln county on May 6th, or soon thereafter, the question now urged would be properly presented for our consideration, and it might then be necessary for us to construe and interpret the statute. It was not, however, tried during that term of the court, but was afterwards tried before the court in chambers at Estancia in Torrance county. The trial began on June 7th, and no objection or protest whatever appears to have been made. No request for a postponement or a continuance was then presented. Instead, all parties went to trial without objection in any form. Obviously, the defendants are now in no position to complain of the order setting the case to be tried on May 6th, because it was not tried at the time or place there fixed, but was actually tried 30 days thereafter at a different time and place altogether, and without objection. The mere setting of the case for trial could not injure the defendants. They could be injured only by a trial of the case with an adverse result. Just how they were prejudiced by the mere making of the order setting the case to be tried in Lincoln county on May 6th is something difficult for us to understand.

[2] 2. Viewing the motion as one for a continuance on account of an absent witness, there was no error in denying it, because it was not verified as is expressly required by section 4460, Code 1915. Neither was any diligence shown with respect to ascertaining the whereabouts of said witness for securing his presence at the trial or his testimony by deposition. This was also sufficient to warrant its denial. Turning now to that part of the motion dealing with the business engagements of the defendants Thompson and Gilillour, and their inability to attend the trial, sufficient it is to

say that they were both present and testified. Manifestly, the only injury which they sustained in the denial of the motion on this account concerned their business, and we cannot remedy that.

[3] 3. The defendants strenuously urge for a reversal of the case that there is a variance between the amended complaint of the plaintiff and his proof. This contention proceeds upon the theory that said complaint charged that the well was completed before August 31st, and notice thereof given to the defendants within 10 days thereafter, and that the proof fails to show these facts, but, to the contrary, shows that the well was completed after said date and the notice thereof given to the defendants October 26th. The material part of the complaint is in this language:

"The plaintiff says that he has duly performed all of the conditions of said contract on his part to be performed, that is to say, he continued the drilling and sinking of said first-named well after the execution of said contract, and before the said 31st day of August, 1920, he obtained an excess of (5) five gallons of water therein, which could be pumped from said well per minute and which, upon being thereafter tested with a pump placed at said well by the plaintiff and at his expense, yielded about seven and one-half (7½) gallons of water per minute, but he says the defendants have wholly failed to carry out their part of said contract in this, that they have failed and refused to go with the plaintiff upon the premises to witness said test, though frequently requested so to do; that they have refused to accept said well according to the terms of said contract and have refused to execute to plaintiff their promissory note for ten thousand dollars ($10,000), payable on the 10th day of November, 1923, or at any other time after demand made thereafter by plaintiff, and have announced to plaintiff that they do not intend to carry out their part of said contract and do not intend to pay the plaintiff any sum whatever under said contract."

The proof on the part of the plaintiff is that the well was completely drilled before August 31st, and that water which afterwards tested more than 5 gallons per minute was obtained before said date. The pipe and pump were installed after said date, and the test was not actually made until some time during October. We think the pleading is sufficiently broad to support

this proof, as the language used is broad enough 'to bear the construction that the well was completely drilled and sunk prior to said date, and that the water struck and obtained, on being afterwards tested, proved to be more than 5 gallons per minute. A variance between the pleading and proof of a party litigant which precludes a recovery means a substantial and material difference, in that they depart from each other upon a material phase of the cause of action or defense. Epstein v. Waas, 28 N. M. 608, 216 Pac. 506. There is not such a variance here. It can be nothing more than an immaterial one. The pleading is susceptible of a construction which completely harmonizes with the evidence.

[4] 4. The only provision contained in the contract with regard to the time in which the well in question should be completed is in this language:

"It is further agreed that the said first party (plaintiff) shall have until the 31st of August, 1920, in which to carry out his part of this contract, if that length of time is required by him, from date hereof."

It does not contain any provision declaring or authorizing a forfeiture or discharge in the event plaintiff failed to completely perform within the specified time, in fact, the above is the only provision to be found in the contract which bears upon the question either directly or remotely. The defendants say the undisputed evidence shows that the well was not completed and ready to be tested with a pump before August 31, 1920, and that thereby they were discharged from further obligation to accept it or pay for it. There is evidence in the record that the well was completely drilled and 17 feet of water obtained before August 31, 1920, and that the only things done thereafter were to install the pipe and pump and make the test; that these things were completed about October 20th, or about 50 days, at most, after August 31st. The trial court expressly found that the plaintiff completed said well and obtained more than 5 gallons of water per

minute, by pump test, within a reasonable time after the date of the contract. This finding is certainly equivalent to finding that it was completed within a reasonable time after August 31st, because the contract was dated long prior thereto and the well could not therefore have been completed within a reasonable time after the date of the contract, without also being completed within a reasonable time after August 31st aforesaid. It is to be recalled that the parties here are proceeding in equity. The plaintiff seeks to recover the contract price of the well with an establishment and foreclosure of his lien upon said well and the lands adjacent thereto, as provided in the contract. The defendants plead, in defense and by way of counterclaim, the entire transactions between themselves and the plaintiff, of which the contract sued upon by the plaintiff is part. Thus the entire matters in controversy are drawn into equity. This is purely a suit in equity. Young et al. v. Vail et al., 222 Pac. 912, recently decided by us and not yet officially reported. The general rule in equity is that the time fixed for performance is not regarded as of the essence of a contract, unless the parties have expressly treated it so in the language used by them, or unless it necessarily follows and must be implied from the nature of the contract and the circumstances surrounding it. 2 Elliott on Contracts, § 1555; 4 Page on Contracts, § 2105; 2 Williston on Contracts, § 849; 13 C. J. Contracts, § 785; 2 Story's Eq. Jur. § 1064; 4 Pom. Eq. Jur. § 1408; 5 Pom. Eq. Jur. §§ 2232-2237; Burnett Coal Mining Co. v. Schrepferman et al. (Ind. App.) 133 N. E. 34; Preferred Underwriters, Inc., et al. v. New York, N. H. & H. R. Co. et al., 243 Mass. 457, 137 N. E. 590; Fannin v. Devine et al., 294 Ill. 597, 128 N. E. 745; Stern v. Sharpiro, 138 Md. 615, 114 Atl. 587. The language used in the contract certainly did not treat time as of its essence, and the trial court expressly refused to find that the parties regarded it as such, and likewise refused to find that the plaintiff did not continue or diligently proceed with said well to its completion. The undisputed evidence

discloses that said well has cost the plaintiff $16,000, and that he is to receive only $10,000 from the defendants for it. To deprive him of this sale price because of a short and not unreasonable delay in its completion, with no injury to the defendants shown, would work an unconscionable hardship upon him— a thing which equity will not do. And the trial court expressly found that the defendants had failed to show that they had suffered any damage by reason of said well not being completed sooner. The assignment is therefore not meritorious.

[5] 5. We come now to the next contention of the defendants; namely, that, under the facts proven, the court erred in refusing to find in their favor upon their counterclaim in the sum of $14,000. They argue that, during the negotiations leading up to the sale of the sheep and ranch, the plaintiff told and represented to the defendants that he was in control of said range, and that if they purchased said property they would control such range, which meant in substance and effect that he owned and controlled all of the water which was available for stock grazing on said range, and that such statements and representations were false and fraudulent, in that he knew of the Waller and Billings well and fraudulently concealed knowledge of such facts from them. In this connection, they further argue that, if the plaintiff did not in fact know of such well, then he assumed to know the facts and in reckless disregard of the true facts made such statements and representations, and that, in either instance, he is liable for the damages suffered by the defendants, to wit, the difference between the actual value of the property and its value had it existed as represented. The establishment of these facts was, of course, necessary in order for the defendants to recover, and, realizing this, they tendered many requested findings to the court, some of which were allowed and others refused. The court expressly refused to find, as requested by them, that, at the time the plaintiff showed said ranges to the defendants, he knew the

Waller and Billings well had been drilled and completed. He likewise refused to find that the plaintiff represented that he controlled said ranges. Thus the court found that the defendants had failed to establish these necessary elements of their counterclaim and were not therefore entitled to recover. We have carefully read the record and think, under all the facts and circumstances proven, the court was warranted in taking this view.

Many other errors are assigned. Some of them are discussed in the briefs. We have examined all of them and find no merit in any of them.

The decree of the lower court should be affirmed, and that court is directed to enter judgment against appellant and the sureties on his supersedeas brief in accordance herewith and it is so ordered.

PARKER, C. J., and BOTTS, J., concur.