JOHN F. BOWLER *vs.* THE BOARD OF IMMIGRATION.

A. S. CLEGHORN, Collector–General of Cuostoms, *vs.* W. S. LUCE.

APPEAL FROM DOLE, J., ON ALLOWANCE OF ATTORNEY'S FEES AND COMMISSIONS.

JULY TERM, 1889.

JUDD, C.J., McCULLY, PRESTON, BICKERTON and DOLE, JJ.

Where the Government *eo nomine* is sued or brings a suit, or where a department or bureau or officer of the Government has brought suit or is sued concerning matter which in fact is not personal, but involves a claim of the Government as plaintiff, or a liability of the Government as defendant, the plaintiff recovering, should not have judgment for attorney's fees or commissions, nor should the plaintiff, on losing, be taxed with attorney's fees and commissions on the amount sued for; under the statute on page 416, Compiled Laws.

OPINION OF THE COURT, BY JUDD, C.J.     DOLE, J., Dissenting.

The appeals in the above entitled causes, bringing up the same question, are by agreement considered together.

In the first case the Attorney-General, who appeared *ex officio* for the Board of Immigration, presented a bill of costs for taxation, which contained the items of attorney's fees for drawing various pleadings and for attendances, etc., and also for $232.50 attorney's commissions on the *ad damnum.* The case had been disposed of by the sustaining by the Court in Banco of defendant's demurrer.

In the second case the Attorney-General appeared for the plaintiff, and the declaration sets forth that the Collector-General brings the action on behalf of the Hawaiian Government. The Court in Banco sustained defendant's demurrer.

The defendant's counsel filed a bill of costs for taxation, claiming attorney's fees for pleadings, attendance, etc., and $279.31 attorney's commissions on the *ad damnum.*

The question before us is whether the plaintiff in each case should be charged with defendant's attorney's fees and commissions.

The authority claimed for the charge of the attorney's commissions is the 5th Section of the Act of July 29, 1872 (p. 416 Compiled Laws), which reads:

"Section 5. In all the Courts of this Kingdom, in all actions of assumpsit there shall be taxed as attorney's fees, in addition to the attorney's fees now taxable by law, to be paid by the losing party and to be included in the sum for which execution may issue, ten per cent. on all sums to one hundred dollars, and two and one-half per cent. in addition on all sums over one hundred dollars, to be computed on the excess over one hundred dollars. The above fee shall be assessed on the amount of the judgment obtained by the plaintiff, and upon the amount sued for, if the defendant obtain judgment."

We think it a sound principle that where the Government *eo nomine* is sued or brings a suit, or where a department or bureau or officer of the Government has brought suit or is sued concerning matter which in fact is not personal, but involves a claim of the Government as plaintiff, or a liability of the Government as defendant, the plaintiff recovering should not have judgment for attorney's fees or commissions, nor should the plaintiff on losing be taxed with attorney's fees and commissions on the amount sued for.

In this class of cases the Attorney-General is required by the statute to apppear, and he is forbidden to accept any fee or reward for any business to which it shall be his official duty to attend. By provision of the same law he is bound to account to the Treasury for all fees, bills of costs, etc., etc., received by him by virtue of his office.

The Government, when sued, should not be called upon to pay attorney's fees and commissions, any more than court costs, which finally go to the Treasury. In *The Antelope*, 12 Wheat., 546, the Supreme Court of the United States said that it is a general rule that no court can make a direct judgment or

decree against the United States for costs and expenses in a suit in which the United States is a party, either on behalf of any suitor or any officer of the Government. This is affirmed in *U. S. vs. Ringgold*, 8 Peters, 163. And if the Government should not pay these costs it should not exact them from others for the benefit of the Treasury. This has been the uniform practice in this Court, and we see no reason why it should be departed from.

The recent Act of the Legislature of 1888, "to provide for the bringing suits by or against the Hawaiian Government," has not altered the situation. Before this Act the Government could not be sued unless consent was given by the King in Privy Council, and now it cannot be unless process is allowed by a majority of the Justices of the Supreme Court.

The power of the Government to sue has never been limited, and it is not enlarged by the recent statute.

We sustain the appeal in both cases.

*A. S. Hartwell*, for Bowler and Luce.

*C. W. Ashford* (Attorney-General), for Board of Immigration and Cleghorn.

---

### DISSENTING OPINION OF DOLE, J.

The issue before the Court is not what may or may not be a sound principle, but what is the law. Even in the United States, where it is a general rule that no court can make a direct judgment or decree against the Government for costs and expenses in a suit to which the United States is a party (*The Antelope*, 12 Wheat., 546), the Government is sometimes liable for its own costs in cases where it is the plaintiff (*U. S. vs. Ringgold*, 8 Pet., 150, 163). At the time the case of *U. S. vs. Ringgold* was decided, "no direct suit could be maintained against the United States" (*Ibid*), which fact justifies the rule laid down in *The Antelope*, above referred to; but here the law is different; the Legislature of 1888 enacted a law which empowered private persons having claims against the Hawaiian

Government to bring and maintain suits against the same for the purpose of adjudicating such claims. Laws of 1888, Chapter LI. Previous to the promulgation of the Constitution of 1887, private persons could legally sue the Government by permission of the King in Privy Council—(Civil Code, Section 829); neither the statute nor the rules of court relating to costs make any exception in favor of the Government; attorney's fees are made costs by law. This privilege given by the law of 1888 to private persons of bringing action against the Government is a right which cannot be refused, where the complaint sets forth a fair subject for judicial investigation, the provision for an endorsement by the Justices of the Supreme Court upon the complaint, of an allowance of process, being analogous to their power of dismissing any cause on demurrer.

The general rule of law as to the liability of the Government under statutes is, that it is not bound by a statute unless it is named in it, or in other words, the Government "is not reached except by express words or by necessary implication in any case where it would be ousted of an existing prerogative or interest." Endlich on the Interpretation of Statutes, Section 161. "The Crown, however, is sufficiently named in a statute within the meaning of the maxim, when an intent to include it is manifest. For instance, 20 and 21 Vict., C. 43, which entitles (by Section 2) either party, after the hearing by a Justice, of any information or complaint which he has power to determine, to apply for a case for the opinion of one of the Superior Courts; and after authorizing (by Section 4) the Justice to refuse the application, if he deems it frivolous, provides that it shall never be refused when made by or under the direction of the Attorney-General, and directs (by Section 6) the Supreme Court not only to deal with the decision appealed against, but to make such order as to costs as it deems fit, was held by the Queen's Bench to include the Crown, and to authorize an order against it for the payment of costs. The language of the Second Section was wide enough to include the Crown; and as the fourth referred to the Crown as plainly as if it had spoken expressly of Crown

cases, the language of the sixth authorizing costs was construéd as applying to such cases also, as well as to cases between subject and subject." *Ibid*, Section 166, and *Moore vs. Smith*, 1 E. & E., 597, 28 L. J., 126. "Where general rights are declared or remedies given by law, the commonwealth, though not named, is included." *Commonwealth vs. B. & M. Railroad*, 3 Cush., 25, and Endlich on the Interpretation of Statutes, Section 167. "It is urged that the Government is not bound by a law unless expressly named; we do not see why this rule of construction should apply to acts of legislation which lay down general rules of procedure in civil actions. The very fact that it is confined to civil actions would seem to show that Congress intended it to apply to actions in which the Government is a party as well as those between private persons. For the United States is a necessary party in all criminal actions, which are excluded *ex vi termini;* and if it had been the intent to exclude all other actions in which the Government is a party, it would have been more natural and more accurate to have expressly confined the law to actions in which the Government is not a party instead of confining it to civil actions. It would then have corresponded precisely with such intent. Expressed as it is, the intent seems to embrace instead of excluding civil actions in which the Government is a party." *Green vs. U. S.*, 9 Wall., 658. When the Act of 1888, providing for the bringing of suits by or against the Hawaiian Government, was passed, the present laws and rules of Court relating to costs and attorney's fees were in force; but the Legislature chose to enact the law and to authorize individuals to bring and maintain suits against the Government without making any exceptions as to costs. The inference is direct and strong that they intended that the existing rules should apply to the Government as well as to other litigants.

The statute does not say that the Attorney-General "is forbidden to accept any fee or reward for any business to which it shall be his official duty to attend," but that he "shall not receive any fee or reward from or on behalf of any person or

prosecutor, for services rendered in any business to which it shall be his official duty to attend." This appears to refer to professional fees from prosecuting witnesses or other persons interested in the result of any proceedings in which the Attorney-General may be officially acting, so far as it refers to cases before the Courts, but it clearly does not refer to costs, for the next Section recognizes his authority to collect bills of costs by virtue of his office, and directs him to account for the same to the Minister of Finance. This statute pretty well covers the ground of the question before the Court. It is not pretended that these costs, claimed by the Attorney-General, belong to him as a private perquisite, but he is entitled to them in his official capacity and that he shall account for them is provided for as we have seen.

It is no new idea that one department of the Government should owe and pay money to another department; it is done every day and the public bookkeeping is undoubtedly made clearer and more simple by the practice.

Feeling as I do, that this question is not one of policy but of law, and that the law does not except the Government, and that it cannot be and has not been argued that it excepts Bowler, the plaintiff in the first named case, I adhere to my original decision and dissent from the opinion of the majority of the Court.