RONALD L. BRINK, d/b/a Brink Construction Company, Plaintiff-Appellee and Cross-Appellant, v. HAYES BRANCH DRAINAGE DISTRICT OF DOUGLAS COUNTY, Defendant-Appellant and Cross-Appellee.

Fourth District   No. 14623

Opinion filed May 12, 1978.

John H. Armstrong and Richard F. Record, Jr., both of Craig & Craig, of Mattoon, for appellant.

R. P. O'Connell, of Quincy, for appellee.

Mr. JUSTICE MILLS delivered the opinion of the court:

In short, we have here a drainage district, a contract for channel improvements, substantial compliance and a judgment for the construction company.

Precisely stated—the trial court was correct.

There is no question whatever that the plaintiff (Ronald L. Brink, d/b/a Brink Construction Company) and defendant (Hayes Branch Drainage District of Douglas County, Illinois) entered into a contract whereby plaintiff agreed to construct approximately 10.9 miles of channel improvements for $196,855. But there most assuredly is disagreement concerning what was discussed at the contract letting.

According to Brink, shortly before the contract was signed, Robert Smith, a government representative for the Soil Conservation Service which provided technical and financial assistance for the construction project, told him that they had not yet obtained a *burning* permit, but assured him they would get a permit before Brink got to Route 36. Smith asked Brink what the extra cost would be for *burying* all the debris for that first segment and Brink replied $6,000. Brink claims neither Smith nor the 3 drainage district commissioners who were present disputed this additional cost; nor did they later tell Brink to stop working because they were unable to obtain a variance.

On the other hand, Robert Smith stated that the discussion concerning burning or burying occurred at the preconstruction meeting which followed the signing of the contract. Even at that meeting, however, he did not promise that they would get a variance. The subject was not discussed before Brink signed the contract because Smith assumed Brink knew no variance had been obtained since he had a copy of the general provisions which indicated it was the contractor's responsibility to secure permits. Smith did testify at a hearing before the Illinois Pollution Control Board in order to help obtain a burning variance, but the reason he did so was to expedite the contract and get construction started. The commissioners supported Smith's contention that the district did not promise Brink that they would obtain a variance, but merely sought a variance to expedite construction and completion of the project.

Work on the channel consisted of clearing the brush, excavating the channel, installing drain structures and animal guards, leveling the spoil or sediment, and seeding the ditch. On some of the 27 bridges on the project the men operating the dragging equipment would excavate to the bridge and then continue with the excavating work on the other side of the bridge. Plaintiff contended that they went back and finished every bridge by hand except two which did not require any excavation. The defendant presented testimony that the excavation under the bridges was incomplete because the cross-section shape under the bridges did not conform to the cross-section of the channel.

Witnesses for the drainage district also testified that there was woody regrowth in the channel, debris in the spoil, insufficient cover over the debris, and tile without animal guards. Brink claimed the woody

regrowth was vegetation that had grown up after the original removal. He had not attempted to take out any root systems because the contract only required vegetation to be cut off to the grade of excavation. On cross-examination, Robert Smith's successor, George Reitz, Jr., stated that some trash in the spoil is usual and customary and that the contract did not require rock excavation. Reitz conceded there was no record of any measurement of the depth of the spoil. Since freezing and thawing over a period of time causes material shrinkage of soil, he could not say that the materials in the spoil were not below the required two-foot cover when the work was completed. Nor could he say Brink originally failed to place animal guards over all the tile.

The trial court found that $15,747.95 under the original contract and $13,734.84 under contract modifications was due the plaintiff, but found against the plaintiff on his claims based on oral contract modifications, reliance and promissory estoppel. The court stated that although the contract had not been fully performed, the construction company was entitled to the contract price because there had been substantial performance.

A. On appeal the district claims Brink was precluded from recovering on theory of substantial performance because plaintiff failed to plead it. Brink alleged in his amended complaint that he "fully performed and executed the contract and complied with all terms, provisions and requirements set forth in the original contract." This allegation was denied by the defendant in his answer and at the trial Brink testified he substantially performed the terms and conditions of the contract.

It is noted in 17A C.J.S. *Contracts* §574 (1963), that the authorities differ as to whether proof of *substantial* performance is sufficient under an allegation of *complete* performance. Although Corbin recognizes there is an opposing view, he states that an allegation of "full performance" is sufficiently supported by proof that one has rendered "substantial performance." 3A A. Corbin Contracts §712 (1960).

Our sister court in California in *Patrick J. Ruane, Inc. v. Parker* (1960), 185 Cal. App. 2d 488, 503, 8 Cal. Rptr. 379, 389, held that "the contractor who pleads performance, need prove only substantial performance, defendant being allowed an offset for deficiencies in the work." In *Owen v. Thompson* (1924), 29 N.M. 517, 224 P. 405, that court reasoned that a variance between pleading and proof which precludes a recovery means a substantial and material difference. Since *substantial performance* indicated an *immaterial difference*, the pleading of performance harmonized with proof of substantial performance. Although the pleading issue was not raised in *Surety Development Corp. v. Grevas* (1963), 42 Ill. App. 2d 268, 192 N.E.2d 145, the result is consistent with

*Patrick J. Ruane* and *Owen* in that the plaintiff alleged performance and the court allowed recovery under substantial performance. The defendant tendered *Watson Lumber Co. v. Guennewig* (1967), 79 Ill. App. 2d 377, 226 N.E.2d 270, in support of the proposition that plaintiff fatally failed to plead substantial performance, but that case merely states a plaintiff has the burden to prove substantial performance, not that it must be specifically pleaded.

■■ Supreme Court Rule 133(c) also supports a finding that one may plead performance and prove substantial performance. The rule provides: "In pleading the performance of a condition precedent in a contract, it is sufficient to allege generally that the party performed all the conditions on his part." (Ill. Rev. Stat. 1975, ch. 110A, par. 133(c).) Returning to Corbin, one reads that substantial performance is a condition precedent "not because it is so stated in words, but because justice requires it." (3A A. Corbin Contracts §712, at 347 (1960).) Thus, the allegation of performance in this case was sufficient.

■■ ■ B. Though conceding that no Illinois court has yet decided the issue, the district next asserts that the doctrine of substantial performance should not apply to an Illinois drainage district, which is a municipal corporation. This posture, however, is not persuasive. As a general proposition, the rules of law governing the performance of private contracts are applicable to municipal contracts. (*Wall v. Chicago Park District* (1941), 378 Ill. 81, 37 N.E.2d 752; 63 C.J.S. *Municipal Corporations* §1022 (1950).) For example, specific performance was granted against a municipality in *Arlington Heights National Bank v. Village of Arlington Heights* (1965), 33 Ill. 2d 557, 213 N.E.2d 264. Likewise, we find substantial performance is applicable to the defendant Illinois drainage district in this case.

■■ ■ C. The district further claims that Brink neither strictly *nor* substantially complied with the contract—*ergo*, the trial court's finding that the plaintiff had substantially performed was against the manifest weight of the evidence. In the case of a construction contract, substantial performance of the contractual work and good faith on the part of the contractor is all that is required. (*Watson Lumber Co. v. Mouser* (1975), 30 Ill. App. 3d 100, 333 N.E.2d 19; *Watson Lumber Co. v. Guennewig* (1967), 79 Ill. App. 2d 377, 226 N.E.2d 270; *Surety Development Corp. v. Grevas* (1963), 42 Ill. App. 2d 268, 192 N.E.2d 145.) An owner who gets substantially what he bargained for must pay the contract price, less a credit—measured by the cost of correcting the defects or completing the omission. (*Brewer v. Custom Builders Corp.* (1976), 42 Ill. App. 3d 668, 356 N.E.2d 565.) The fact that a contractor abandons a project is also not in all circumstances *per se* bad faith. *Watson Lumber Co. v. Mouser.*

Here, there was testimony that the channel was generally in accordance with specifications. The district claims there was incomplete excavation under the bridges, but only 220 more cubic yards of dirt (out of 241,000 cubic yards for the total contract) should have been removed. Although excess dirt in critical places may be more significant than its percentage of the total project would indicate, there was no evidence concerning specific dirt under specific bridges. Since evidence of the depth of the cover at the time of the completion of the work was also lacking, the material in the spoil could have been below 2 feet of cover before freezing and thawing took its affect.

■■ Whether there has been substantial performance is a question to be determined by the trier of fact. (*Sampson v. Marra* (1951), 343 Ill. App. 245, 98 N.E.2d 523.) In light of the conflicting evidence in this case, the trial judge's finding that there had been substantial performance and good faith does not appear to us to be against the manifest weight of the evidence.

■■ D. Finally, the district contends the trial court erred in assessing costs against the drainage district. Although it is true a municipal corporation is not liable for costs when acting in its governmental capacity, a municipality may be held responsible for costs when appearing in its private or proprietary capacity. (*Town of Grafton v. Mooney* (1900), 89 Ill. App. 622; see, *e.g., City of Chicago v. English* (1899), 180 Ill. 476, 54 N.E. 609; *City of Chicago v. Nichols* (1898), 177 Ill. 97, 52 N.E. 359.) A municipality holds its streets, highways and bridges in a proprietary capacity. (*Campbell v. City of Marseilles* (1955), 5 Ill. App. 2d 45, 124 N.E.2d 677.) Likewise, contracts for drainage ditch repairs are within a municipality's proprietary capacity. Therefore, we hold that it was within the trial court's discretion to assess the costs to the drainage district. Ill. Rev. Stat. 1975, ch. 33, par. 12.

■■ E. In his cross-appeal, Brink claims the trial court's decision that he was not entitled to recover damages under the doctrine of promissory estoppel was against the manifest weight of the evidence. The general rule of promissory estoppel was stated in *Dill v. Widman* (1952), 413 Ill. 448, 455, 109 N.E.2d 765, 769:

> "[W]here a party by his statements or conduct leads another to do something he would not have done but for the statements or conduct of the other, the one guilty of the expressions or conduct will not be allowed to deny his utterances or acts to the loss or damage of the other party."

Brink alleged he was assured by Smith in the presence of the drainage district commissioners that a burning permit or variance would be secured shortly and that he would be compensated for the additional

expense incurred by burying all materials until a variance was secured. Plaintiff claims he relied upon these representations and signed the contract. However, no variance was obtained by the district and Brink had to bury all the material which was more costly than his anticipated plan: burning 80% of the vegetation and burying the remaining 20%.

In opposition to Brink's testimony, Robert Smith and John Bundy admitted a burning variance was discussed by the parties, but maintained the discussion was at the preconstruction meeting *after* the contract was signed. Although the contract stated that "[a]ll materials removed from the cleared and grubbed areas shall be burned or buried," Smith pointed out that the regulations indicated it was the construction company's responsibility to get the variance. The drainage district tried to get one because it would benefit them by expediting the construction.

■■ The trial court found that conversations relative to obtaining a burning permit took place after Brink had submitted his bid and that the evidence did not show that defendant ever promised to obtain a burning permit. Since the court's decision finds substantial support in the record and is not against the manifest weight of the evidence, it should not be overturned on appeal.

Consequently, the trial court's judgment is affirmed in all respects.

Affirmed.

REARDON, P. J., and TRAPP, J., concur.