MAHER AZER, individually, as successor in interest to SGM PARTNERS, and as assignee of EZZAT W. WASSEF, Respondent, Appellant/Cross–Appellee, v. MICHAEL S. MYERS, GRUBB AND ELLIS COMMERCIAL BROKERAGE COMPANY and GRUBB AND ELLIS COMPANY, Petitioners/Respondents, Appellees/Cross–Appellants, and BEN GROMET, Petitioner/Respondent, Appellee/Cross–Appellant, and MARGARET T. CAMERON, Petitioner/Respondent, Appellee/Cross–Appellant, and ALFRED SHAHEEN, Respondent–Appellee, and MICHAEL S. MYERS, GRUBB AND ELLIS COMMERCIAL BROKERAGE COMPANY, GRUBB AND ELLIS COMPANY, Petitioners/Respondents, Appellees/Cross–Appellants, and BEN GROMET and MARGARET T. CAMERON, Petitioners/Respondents, Appellees/Cross–Appellants, and ALFRED SHAHEEN, Respondent–Appellee, v. EZZAT W. WASSEF, Respondent, Appellant/Cross–Appellee

(CIV. NO. 85–1801)

and

SGM PARTNERS and MAHER AZER, Respondents, Appellants/Cross–Appellees, v. THE PROFIT COMPANY, LIMITED, dba PIZZA TIME THEATRE, Respondent–Appellee, and SGM PARTNERS and MAHER AZER, Respondents, Appellants/Cross–Appellees, v. MICHAEL S. MYERS, GRUBB AND ELLIS COMMERCIAL BROKERAGE COMPANY and GRUBB AND ELLIS COMPANY, Petitioners/Respondents, Appellees/Cross–Appellants, and BEN GROMET and MARGARET T. CAMERON, Petitioners/Respondents, Appellees/Cross–

Appellants, and **ALFRED SHAHEEN**, Respondent–Appellee, and **MICHAEL S. MYERS, GRUBB AND ELLIS COMMERCIAL BROKERAGE COMPANY, GRUBB AND ELLIS COMPANY**, Petitioners/Respondents, Appellees/Cross–Appellants, and **BEN GROMET** and **MARGARET T. CAMERON**, Petitioners/Respondents, Appellees/Cross–Appellants, and **ALFRED SHAHEEN**, Respondent–Appellee, v. **EZZAT W. WASSEF**, Respondent, Appellant/Cross–Appellee

(CIV. NO. 85–3466)

NOS. 12578, 12629, 12630, 12631,
12632, 12633, 12634

JULY 16, 1990

HAYASHI, ACTING C.J., AND WAKATSUKI, JJ., AND CIRCUIT JUDGE HEELY, IN PLACE OF LUM, C.J., RECUSED, CIRCUIT JUDGE KAULUKUKUI, IN PLACE OF PADGETT, J., RECUSED, AND CIRCUIT JUDGE LEVINSON, IN PLACE OF MOON, J., DISQUALIFIED

OPINION OF THE COURT BY HAYASHI, J.

We granted certiorari to two of the parties in order to address two of the issues raised in connection with the Intermediate Court of Appeals (ICA) opinion in *Azer v. Myers* [published as *SGM Partners v. The Profit Co.*], 8 Haw. App. 86 , ___ P.2d ___ (1990). Based on the reasons set forth below, we reverse in part and affirm in part.

## I.
## FACTUAL BACKGROUND

The pertinent facts for purposes of this opinion are as follows.

In May 1983, SGM Partners (SGM), the original owner and lessor of the subject property, entered into a lease with The Profit Co., Ltd. (Profit) for certain commercial space located at 1680 Kapiolani Boulevard, with the lease guaranteeing the use of a certain number of parking stalls. Michael Myers (Myers), one of the SGM partners, had negotiated the lease on behalf of SGM.

A month later, in June 1983, Ben Gromet's (Gromet) and Myers' respective partnership interests in SGM were purchased by two other SGM partners.

Meanwhile, from the opening of Profit's business in December 1983, SGM failed to provide Profit with the number of parking stalls as agreed upon in the lease. Consequently, Profit began to withhold rent.

By letter dated June 3, 1985, a settlement agreement was memorialized between SGM and Profit over the number of parking stalls and withheld rent issues. Soon thereafter, however, SGM failed to furnish Profit with the newly agreed upon number of parking stalls, and Profit refused to comply with the terms of the settlement agreement.

In May 1985, SGM and Maher Azer (Azer), who eventually succeeded SGM as the owner–lessor, filed suit against several defendants, including: 1) Gromet; and 2) the brokers SGM utilized in this leasehold transaction (Brokers). Later, in April 1986, Azer, as successor in interest to SGM, filed an amended complaint alleging, *inter alia*: 1) negligence and offset claims against Gromet; and 2) breach of fiduciary duty and negligence claims against Brokers.

The case proceeded to a consolidated trial.

During the trial, Gromet moved for directed verdicts on all of Azer's claims against him. The trial court subsequently granted Gromet's motion, including Gromet's motion for a directed verdict on Azer's negligence and offset claims.

After the jury returned its special verdict, judgment was entered accordingly. Included in the judgment was the entry of judgment in Azer's favor and against Brokers, based on the jury's findings of negligence and breach of fiduciary duty on Brokers' part.

The trial court subsequently denied Azer's motion to recover attorney's fees and costs from Brokers.

On appeal, the ICA vacated: 1) the entry of directed verdict in Gromet's favor on Azer's negligence and offset claims; and 2) the denial of Azer's request for attorney's fees and costs from Brokers. The ICA then remanded for, *inter alia*: 1) a retrial of Azer's negligence and offset claims against Gromet; and 2) a determination of attorney's fees and costs recoverable from Brokers by Azer. In all other respects, the ICA affirmed the trial court.

Upon applications to this court, we granted certiorari to two of the parties in order to address two issues we believe are worthy of discussion.

We now proceed to examine these two respective issues.

## II.
## DIRECTED VERDICT

Gromet, a former partner, contends the ICA erred in vacating the directed verdict in his favor on Azer's negligence and offset claims.

On a motion for a directed verdict, the evidence is viewed in the light most favorable to the non–moving party. *Shannon v. Waterhouse*, 58 Haw. 4, 563 P.2d 391 (1977) (per curiam), *cert. denied*, 440 U.S. 911, *reh'g denied*, 441 U.S. 917 (1979). And where a jury could reasonably infer that the plaintiff's claim is sustainable, the motion should be denied. *Id.* Conversely, where the evidence is insufficient to submit the case to the jury, the trial court should grant the motion for a directed verdict. *Id.*

We begin by addressing the negligence claim, followed by the offset claim.

### A.
### Negligence Claim

In his amended complaint, Azer alleged that Gromet acted negligently in misallocating the available number of parking stalls. At trial, the trial court subsequently granted a directed verdict in Gromet's favor on the negligence claim.

On appeal, the ICA vacated the trial court's order on this issue. In its ruling, the ICA essentially relied on Myers' testimony to the effect that "Gromet had a small part in negotiating the Profit [l]ease." *Azer v. Myers*, 8 Haw. App. at 117, ___ P.2d at ___.

Given this evidence, the ICA reasoned that a jury could reasonably find that Gromet was negligent in negotiating a lease which contained parking provisions that were in conflict with the parking provisions of an existing lease with a neighboring tenant.

We disagree. The inference drawn from Myers' pertinent testimony by the ICA, we believe, is not a reasonable one. The lease, as originally executed in May 1983, is a lengthy and detailed document which contains many provisions in addition to the one page parking provisions.[1] In our view, just because Gromet had played a small part in negotiating the lease does not therefore lead to the reasonable inference that Gromet was negligent in misallocating the available number of parking stalls. No evidence was presented as to the subject–matter of Gromet's participation in the lease negotiations.[2]

Contrary to the ICA, we hold that the evidence adduced was insufficient to withstand a motion for directed verdict.

## B.
### Offset Claim

As for Azer's offset claim against Gromet, the ICA opined:
> In view of the possibility that Azer might recover some damages on his negligence claim, it was error to grant a directed verdict on his offset claim.

---

[1] Although Myers and Gromet both signed the lease on behalf of SGM, the ICA noted that: 1) none of the parties could execute any lease without the written consent of the other partners; 2) Gromet did not sign the lease as a managing partner; 3) Gromet signed the lease at the request of another partner; and 4) at the time Gromet signed the lease, two other partners had orally agreed to purchase Gromet's partnership interest in SGM. *See Azer v. Myers*, 8 Haw. App. at 117–18 & n.27, ___ P.2d at ___ & n.27.

[2] We note that Gromet testified that he played no part in negotiating the lease.

*Azer v. Myers*, 8 Haw. App. at 117, ___ P.2d at ___.

In view of our ruling upholding the dismissal of Azer's negligence claim against Gromet, we hold that the trial court's dismissal of Azer's offset claim against Gromet was likewise proper. The ICA's contrary ruling on the offset claim issue was thus in error.

## III.
## ATTORNEY'S FEES AND COSTS

The trial court denied Azer's motion to recover attorney's fees and costs from Brokers.

On appeal, the ICA vacated the trial court's order denying attorney's fees and costs to Azer. The ICA ruled that Azer's breach of fiduciary duty claim against Brokers constituted an action on the listing agreement between SGM and Brokers, and thus, Azer was entitled to attorney's fees pursuant to Hawaii Revised Statutes (HRS) § 607–17.

Brokers contend that HRS § 607–17 does not apply because: 1) the listing agreement obligates Brokers to diligently pursue the procurement of a tenant; 2) the listing agreement authorizes reasonable attorney's fees to the prevailing party where the lessor or broker commences litigation to enforce the terms of the listing agreement; and 3) Azer's claims against Brokers did not concern the enforcement of the terms of the listing agreement, i.e., that Brokers had failed to diligently pursue the procurement of a tenant.

We agree with Brokers' position.

HRS § 607–17 authorizes the awarding of reasonable attorney's fees when provided for in a written contract. The listing agreement, in turn, authorizes the awarding of reasonable attorney's fees to the prevailing party where the lessor or broker commences litigation to enforce the terms of the listing agreement.

The enforcement of the listing agreement was not at issue in this case. In his amended complaint against Brokers, Azer did not

seek to enforce the terms of the listing agreement. Hence, the jury's breach of fiduciary duty finding on Brokers' part was independent of any non–existent claim to enforce the listing agreement.

Accordingly, we hold that the ICA's ruling vacating the trial court's denial of attorney's fees to Azer by Brokers was in error.

We view the costs issue as a separate matter.

Azer, as the prevailing party against Brokers, was entitled to reimbursement for costs. *See* HRS § 607–9; Hawaii Rules of Civil Procedure, Rule 54(d). Hence, we affirm the ICA's ruling: 1) vacating the trial court's denial of costs to Azer by Brokers; and 2) remanding for the awarding of reasonable costs.

## IV.
## CONCLUSION

Based on the foregoing reasons, we reverse the ICA's vacation of the trial court's order: 1) granting directed verdict in Gromet's favor on Azer's negligence and offset claims; and 2) denying Azer's request for attorney's fees from Brokers. In all other respects, we affirm.

Reversed in part and affirmed in part.

*James J. Bickerton* (Bickerton, Ramos–Saunders & Dang, of counsel), on the writ and brief, for Petitioners/Respondents Ben Gromet, et al.

*William Meheula,* and *Nadine Y. Ando* (McCorriston, Miho & Miller, of counsel), on the writ and brief, for Petitioners–Respondents Michael S. Myers, et al.

*Jeffrey S. Portnoy, Stephen B. MacDonald,* and *Susan Oki Mollway* (Cades, Schutte, Fleming & Wright, of counsel), on the briefs, for Respondents SGM Partners, et al.

CONCURRING AND DISSENTING OPINION
OF LEVINSON, CIRCUIT JUDGE

I agree, for the reasons stated by the majority, that the evidence adduced by Azer on his negligence and offset claims against Gromet was insufficient to withstand a motion for a directed verdict; I therefore join in the reversal of the ICA's vacation of the trial court's order granting the motion.

I believe, however, that the majority's focus on the "niceties of pleading" with respect to the listing agreement between Brokers and the "Owner" (i.e., Azer, for purposes of this appeal) ignores "the underlying realities" of that contract. *See Higa v. Mirikitani,* 55 Haw. 167, 171–72, 517 P.2d 1, 4 (1973). I would affirm the ICA's reversal of the trial court's denial of Azer's request for attorney's fees from Brokers and would remand for a determination, not only of costs, but also of attorney's fees recoverable from Brokers by Azer. Accordingly, I respectfully dissent from that part of the opinion of the court reversing the ICA.

I. GIVEN THEIR CONTRACTUAL DUTY OF DILIGENCE, BROKERS, THROUGH MYERS, BREACHED THEIR FIDUCIARY DUTY TO AZER IN MISALLOCATING AVAILABLE PARKING SPACE AS A PART OF THEIR NEGOTIATION OF THE PROFIT LEASE, RESULTING IN DAMAGE TO AZER.

By virtue of the judgment entered in Azer's favor and against Brokers based on the jury's findings of the latters' breach of fiduciary duty, Azer proved, *inter alia,* the following facts at trial:

(1) SGM Partners (which, for present purposes, will be referred to as Azer) and Brokers executed an Exclusive Authorization of Lease (listing agreement), pursuant to which Azer granted to Brokers the exclusive right to negotiate a lease or leases for space in the property not already listed;

(2) The listing agreement, by its express terms, obligated Brokers "*diligently* to pursue the procurement of a tenant" in consideration for a commission. (Emphasis added). The listing agreement also provided that "if either [Azer] or Broker[s] commences any litigation to enforce the terms of this [agreement], the prevailing party shall be entitled to receive a reasonable attorney's fee from the other party[;]"

(3). Myers was a real estate agent employed by Brokers;

(4) Myers, as an agent of Brokers, was bound by the terms of the listing agreement;

(5) Myers, as an agent of Brokers and on behalf of Azer, negotiated a lease of space (Profit lease) in the property with Profit;

(6) The terms of the Profit lease were prepared by Myers, who had substantial control over the lease transaction;

(7) The Profit lease guaranteed to Profit a specified minimum amount of parking space incident to Profit's authorized use of the property;

(8) Azer paid Brokers a substantial commission for procuring the Profit lease pursuant to the listing agreement;

(9) Brokers, through Myers, owed Azer a fiduciary duty in obtaining a lessee and negotiating the Profit lease;

(10) Brokers, through Myers, breached their fiduciary duty to Azer, in the course of negotiating the Profit lease, by misallocating the property's available parking space; and

(11) As a result of Brokers' breach of fiduciary duty, Azer sustained damage, for which he was entitled to, and the jury awarded, compensatory damages.

## II. AZER IS ENTITLED TO AN AWARD OF A REASONABLE ATTORNEY'S FEE FROM BROKERS PURSUANT TO HRS § 607–17, INASMUCH AS BROKERS' BREACH OF FIDUCIARY DUTY DERIVED FROM A BREACH OF THEIR CONTRACTUAL DUTY OF DILIGENCE IMPOSED IN THE LISTING AGREEMENT.

When they entered into the listing agreement, Brokers agreed that if either party to the contract commenced "any litigation to enforce the terms" of the agreement, "the prevailing party shall be entitled to receive a reasonable attorney's fee from the other party . . . ." As the majority recognizes, HRS § 607–17 authorizes the awarding of a reasonable attorney's fee when provided for in a written contract. Moreover, this court has recognized for almost seventeen years that "in reality, a claim of injury resulting from . . . professional incompetence . . . is actionable under theories which are an amalgam of both tort and contract." *Higa v. Mirikitani*, 55 Haw. at 172, 517 P.2d at 5. Accordingly, the answer to the question whether the damage award to Azer, based on his breach of fiduciary duty claim against Brokers, arises out of "any litigation to enforce the terms" of the listing agreement determines whether Azer is entitled to recover a reasonable attorney's fee from Brokers in this case.

In my view, the majority's conclusion that "[t]he enforcement of the listing agreement was not at issue in this case," *SGM Partners v. The Profit Co.*, 71 Haw. 506, 512, ___ P.2d ___, ___ (1990), is unduly facile. Specifically, it ignores the inescapable fact that, in finding in favor of Azer on his breach of fiduciary duty claim against Brokers, the jury must *of necessity* have found as a fact that Brokers breached their express, written, contractual duty "diligently to pursue the procurement of a tenant" by misrepresenting, in their negotiations with Profit, the amount of allocable parking space available on the property.

None of the parties to this case disputes that the listing agreement created a fiduciary relationship between Brokers and Azer. Transcript of 7/13/87, at 38–39. It should therefore go without saying that actions for breach of fiduciary duty sound in contract. *Bibo v. Jeffrey's Restaurant*, 770 P.2d 290, 296 (Alaska 1989); **Restatement (Second) of Agency** §§ 400, and 401 comment a, introductory note to ch. 13; s*ee also Higa v. Mirikitani, supra.*

Moreover, the parties do not dispute that, as a fiduciary, Brokers owed Azer an "obligation of the *utmost* faith, integrity honesty, and loyalty in connection with" Brokers' performance of their duties pursuant to the listing agreement. (Emphasis added). Transcript of 7/13/87, at 34. Indeed, the duty of diligence that Brokers' voluntarily undertook is the quintessential expression of that obligation. Such "utmost" or "extraordinary" diligence has been defined as "[t]hat extreme measure of care and caution which persons of unusual prudence and circumspection use for securing and preserving their own property or rights." *Black's Law Dictionary* 411 (5th ed. 1979).

It therefore ineluctably follows that when a duty, fiduciary or otherwise, arises out of a contract, a breach of that duty is a breach of the contract. *See generally Schulz v. Honsador, Inc.*, 67 Haw. 433, 437, 690 P.2d 279, 282 (1984); *Au v. Au*, 63 Haw. 210, 219, 626 P.2d 173, 180 (1981); *Higa v. Mirikitani, supra; see also* **Restatement (Second) of Agency** §§ 400 and 401 comment a, introductory note to ch. 13, *supra.*

Brokers' suggestion that although "Azer's breach of fiduciary claim may be based on the listing agreement, . . . he [is nevertheless] not seek[ing] enforcement of the agreement," Brokers' Supplemental Brief of 5/10/90 at 3, is nothing short of disingenuous. In effect, Brokers are arguing that as long as they *in fact* produced a tenant for Azer pursuant to the listing agreement, they *could not possibly* have breached their fiduciary obligation of diligent pursuit. It is inconceivable to me that if, in the manner of Don Vito

Corleone, Brokers had procured Profit as a tenant by assuring its representatives that Brokers would have their brains or their signatures on the Profit lease, or if Brokers had *intentionally* misrepresented the true amount of allocable parking space available, anyone would deny that Brokers had breached their fiduciary duty of diligent pursuit. Brokers' breach under the circumstances of this case compels no different conclusion. By agreeing diligently to pursue a tenant for Azer, Brokers contractually bound themselves to a standard of care. Brokers' failure to perform according to that standard caused Azer's damages. If that is not a breach of contract, then nothing is.

Azer is entitled by HRS § 607–17 to an award of a reasonable attorney's fee from Brokers.