879 P.2d 1070

**HAWAIIAN ISLES ENTERPRISES INC., Plaintiff–Appellant,**

v.

**CITY AND COUNTY OF HONOLULU, Defendant–Appellee.**

**No. 17296.**

Supreme Court of Hawai'i.

Sept. 15, 1994.

Karl K. Kobayashi (Gary G. Grimmer and Gary D. Weingarden with him on the briefs, of Carlsmith, Ball, Wichman, Murray, Case, Mukai & Ichiki), Honolulu, for plaintiff-appellant.

Nalani P. Wilson–Ku (Hazel G. Beh and Duane W.H. Pang with her on the briefs, for Corp. Counsel), Honolulu, for defendant-appellee.

Before MOON, C.J., and KLEIN, LEVINSON, NAKAYAMA and RAMIL, JJ.

RAMIL, Justice.

Plaintiff–Appellant Hawaiian Isles Enterprises (HIE) appeals the circuit court order granting Defendant–Appellee City and County of Honolulu (City) attorneys' fees arising from an action in which HIE alleged fraud and breach of contract.

HIE contends that: (1) the circuit court erred in granting the City attorneys' fees under section 25 of the Concession Agreement between HIE and the City; and (2) this court's decision in *Bowler v. Board of Immigration*, 7 Haw. 715 (1889), precludes the City from recovering attorneys' fees.

We disagree with HIE and affirm the circuit court's order granting attorneys' fees in favor of the City.

## I. FACTS

As a result of a successful competitive bid, HIE entered into a "Concession Agreement" with the City to operate the Kapiolani Park Golf Driving Range Concession (concession). The Concession Agreement became effective on February 1, 1988, and ran for a period of five years in consideration of HIE's agreement to pay the City $26,000 per month in rent. After providing the City with written notice of termination, HIE ceased operation of the concession and vacated the premises on March 31, 1990.

On December 12, 1990, HIE filed a complaint against the City alleging: (1) fraudulent representation of services; (2) breach of contract; and (3) fraudulent representation of the lease as a concession. The crux of HIE's complaint was that the City fraudulently induced HIE to enter into the Concession Agreement by failing to disclose the City's plans to open the Ala Wai Golf Course Driving Range, in direct competition with HIE.

After a jury verdict on March 12, 1993, the court entered judgment on all counts in favor of the City. Thereafter, the City filed a motion for attorneys' fees under Hawai'i Revised Statutes (HRS) § 607–17 (1985) and section 25 of the Concession Agreement. On July 1, 1993, the circuit court granted the City's motion for attorneys' fees. This timely appeal followed.[1]

---

1. The instant appeal deals exclusively with the circuit court's award of attorneys' fees to the

## II. DISCUSSION

### A. Attorneys' Fees Based on Section 25 of the Concession Agreement and HRS § 607–17

■ HIE contends that the circuit court improperly awarded the City attorneys' fees based on section 25 of the Concession Agreement and HRS § 607–17. The construction and legal effect given a contract provision governing the award of attorneys' fees is a question of law, which we review under the right/wrong standard. *See Cho Mark Oriental Food, Ltd. v. K & K Int'l*, 73 Haw. 509, 519, 836 P.2d 1057, 1063 (1992) (citation omitted).

It is well settled that "[n]o attorney's fees may be awarded as damages or costs unless so provided by statute, stipulation, or agreement." *Food Pantry, Ltd. v. Waikiki Business Plaza, Inc.*, 58 Haw. 606, 618, 575 P.2d 869, 878 (1978) (citations omitted).

In the present case, section 25 of the Concession Agreement between HIE and the City provided:

> [i]n the event the City shall, without any default, be made a party to any litigation, other than condemnation or like proceedings, commenced by or against the Concessionaire arising out of the concessionaire's use or occupancy of the premises or attributable to any structure or objects placed thereupon or therein by Concessionaire, then the Concessionaire shall pay all costs and reasonable attorneys' fees incurred by or imposed upon the City in connection with such litigation.

Attorneys' fees provided for by contract are governed by HRS § 607–17, which provides in relevant part:

> Any other law to the contrary notwithstanding, where an action is instituted in the district or circuit court on a promissory note or other contract in writing which provides for an attorney's fee the following rates shall prevail and shall be awarded to

the successful party, whether plaintiff or defendant:

> (1) Where the note or other contract in writing provides for a fee of twenty-five per cent or more, or provides for a reasonable attorney's fee, not more than twenty-five per cent shall be allowed;
>
> (2) Where the note or other contract in writing provides for a rate less than twenty-five per cent, not more than the specified rate shall be allowed;
>
> provided that the fee allowed in any of the above cases shall not exceed that which is deemed reasonable by the court.[2]

#### 1. Plain Language of Section 25

■ Specifically, HIE argues that section 25 of the Concession Agreement does not apply because HIE's claim of "fraud and illegality" against the City did not arise from the "use and occupancy of the premises" nor were the claims "attributable to the structure or objects" on the premises. We disagree.

HIE relies on *Azer v. Myers*, 71 Haw. 506, 795 P.2d 853 (1990), for support. In *Azer*, a written contract provided for "the awarding of reasonable attorney's fees to the prevailing party where the lessor or broker commences litigation to enforce the terms of the listing agreement." *Id.* at 512, 795 P.2d at 857. Reversing the Intermediate Court of Appeals (ICA), we held that Azer's claim of breach of fiduciary duty against the brokers was "independent of any non-existent claim to enforce the listing agreement" and therefore outside the terms of the provision providing for attorneys' fees. *Id.* at 513, 795 P.2d at 857.

In the present case, it is undisputed that: (1) the City is a party to the litigation; and (2) litigation was commenced by the Concessionaire. The dispositive issue then, is whether the litigation arose out of HIE's "use or occupancy of the premises."

HIE alleged in its complaint: (1) fraudulent representation of services; (2) breach of

---

City. HIE does not raise on appeal the reasonableness of the fees or the merits of the litigation.

**2.** Although HRS § 607–17 applies in the present case, we note that HRS § 607–17 was repealed

in 1993 and HRS § 607–14 amended to include attorneys' fees provided by contract. Act 200, §§ 1 and 2, 1993 Haw.Sess.Laws 482.

contract; and (3) fraudulent representation of the lease as a concession. As HIE's complaint demonstrates, each of these claims arose from HIE's use or occupancy of the premises. The complaint alleged in relevant part:

### Count I

#### (Fraudulent Representation of Services)

*     *     *     *     *     *

25. In reliance on the Defendant's actions, Plaintiff's [sic] bid a high monthly rental payment ... unaware that Defendant was planning the opening of the Ala Wai Golf Driving Range, which subsequently opened and occasioned severe economic damages to Plaintiff, to which Defendant was unwilling to negotiate a reasonable adjustment to Plaintiff's monthly rental.

26. As a proximate result of the Defendant's fraudulent representations, *Plaintiff suffered financial losses in the operation of the Kapiolani Park Golf Driving Range.*

### Count II

#### (Breach of Contract)

*     *     *     *     *     *

30. On or about November 1989, Defendant thereupon occasioned a failure of consideration of subject contract by opening the Ala Wai Golf Driving Range which substantially and materially reduced patronage of the Kapiolani Park Golf Driving Range, the consideration for which Plaintiff agreed to pay Defendant $26,500.00 per month in rental.

*     *     *     *     *     *

32. As a proximate result of Defendant[']s failure of consideration, *Plaintiff suffered financial losses in the operation of the Kapiolani Park Golf Driving Range and was unable to operate at a profit.*

### Count III

#### (Fraudulent Representation of the Lease as a "Concession")

*     *     *     *     *     *

38. The Defendant's representations characterizing the agreement as a concession were material and formed the basis for Plaintiff entering into the agreement, and were made by Defendant with the intention that Plaintiff should rely thereon. Such representations were known by the Defendant to be a fraudulent denomination of an illegal lease as a concession.

39. At the time the Defendant made such representations, the Defendant knew, or should have known, that as Trustees of Kapiolani Park, a public charitable trust, they were specifically prohibited from leasing said portions of Kapiolani Park pursuant to Act 53 of the Session Laws of 1896, approved the sixth day of June of that year.

*     *     *     *     *     *

41. That as a proximate result of the Defendant's fraudulent representation of the lease agreement as a concession, *Plaintiff did suffer loss and damages in dollar amounts* to be proven at the time of trial.

(Emphasis added.)

The complaint also prayed for the following relief in relevant part:

2. As to Counts I and II, that the Defendant be required to account to Plaintiff for loss of profits which may have been realized over the five (5) year term of the contract;

3. As to Counts I and II, that the Defendant be required to account to Plaintiff for loss of use of funds expended in the operation of the Kapiolani Golf Driving Range;

*     *     *     *     *     *

6. As to Count III, that Defendant be required to reimburse Plaintiff for all improvements, equipment, fixtures, and other funds, including, but not limited to, maintenance costs, and direct and overhead operating costs, expended in operating the Kapiolani Park Golf Driving Range[.]

Counts I and II allege lost profits related to the operation of the premises. Count III places in question the validity of the concession agreement, or in other words, whether HIE's use or occupancy of the premises was

lawful. In addition, Count III seeks operating costs and expenditures.

As HIE's complaint demonstrates, HIE's claim against the City arose from its "use and occupancy" of the property. Therefore, HIE's action was clearly contemplated by section 25 of the Concession Agreement. Accordingly, the circuit court properly awarded attorneys' fees to the City under section 25 of the Concession Agreement.

### 2. Whether Section 25 is Limited to the City as a Third Party Defendant

■ In the alternative, HIE argues that section 25 is akin to an indemnity clause and applies only where the City is sued as a third-party defendant. HIE claims that the reference in section 25 to the City being made a party to any litigation "without any default" implies that the provision contemplates litigation only "where the City is impleaded or joined in a lawsuit between [HIE] and a third-party—not in a lawsuit between [HIE] and the City[.]" We disagree.

It is well established that the terms of a contract should be interpreted according to their plain, ordinary, and accepted sense in common speech, unless it appears from the contract that a different meaning was intended. *Amfac, Inc. v. Waikiki Beachcomber Inv. Co.*, 74 Haw. 85, 108, 839 P.2d 10, 24 (citation omitted), *reconsideration denied*, 74 Haw. 650, 843 P.2d 144 (1992); *Maui Land and Pineapple Co. v. Dillingham Corp.*, 67 Haw. 4, 10, 674 P.2d 390, 394 (1984) (citation omitted). Further, " '[a]n agreement should be construed as a whole and its meaning determined from the entire context and not from any particular word, phrase, or clause.' " *Maui Land and Pineapple Co.*, 67 Haw. at 11, 674 P.2d at 395 (citation omitted).

Construing the phrase "without any default" in the context of the entire provision, we are not convinced that section 25 limits an award of attorneys' fees to a situation where the City is sued as a third-party defendant. Section 25 provides in relevant part that "[i]n the event the City shall, without any default, be made a party to any litigation ... commenced by or against the Concessionaire," the Concessionaire shall pay all costs and reasonable attorneys' fees incurred by or

imposed upon the City. In addition, we note that section 25 is the only provision pertaining to attorneys' fees. Construed as a whole, we conclude that section 25 broadly provides for attorneys' fees in two situations: (1) where the City is made a party to *any* litigation commenced by or against HIE; and (2) where the City is sued as a third-party defendant. Therefore, we deem HIE's argument to be without merit.

### 3. Reasonable Expectations of HIE

In a related argument, HIE contends it "reasonably expected" section 25 to apply only where the City was involved as a third-party defendant and it did not expect section 25 to allow attorneys' fees in an action between HIE and the City. HIE contends that section 25 defies its "reasonable expectations" because it "appears to be an indemnity provision and it is not until the reader very carefully reviews the clause that the 'by or against' language is discovered and its possible implications are fully understood." Therefore, HIE urges this court to consider the entire transaction and honor the objectively reasonable expectations of HIE.

To support its position, HIE relies on *AIG Hawaii Ins. Co. v. Estate of Caraang*, 74 Haw. 620, 851 P.2d 321 (1993) and *Leong v. Kaiser Found. Hosp.* 71 Haw. 240, 247, 788 P.2d 164, 168 (1990). *Estate of Caraang* and *Leong* are, however, distinguishable from the instant case. In *Estate of Caraang*, an automobile insurer sought a declaration that it owed no duty to defend and indemnify its insured and his passenger in a lawsuit commenced by the estate of another driver who was shot and killed by the insured's passenger. *Estate of Caraang*, 74 Haw. at 628, 851 P.2d at 325. After concluding that AIG had a duty to defend the insured, we addressed AIG's alleged duty to the insured's passenger. In doing so, we recognized that in the past we had honored "the objectively reasonable expectations of policy holders and intended beneficiaries regarding terms of insurance policies[.]" *Id.* at 643, 851 P.2d at 332 (citations omitted). We then concluded that the passenger " 'could not reasonably expect to be covered or defended with respect to [the other driver's] death.' " *Id.*

(citation omitted). We based our conclusion on the facts that: (1) from the viewpoint of the passenger, the shooting death of the other driver did not arise out of an auto accident, but rather was intentionally caused; and (2) the insured's policy excluded liability coverage for any person who intentionally caused bodily injury to another. *Id.* (citation omitted). Therefore, we held that AIG did not have a duty to defend the passenger.

In *Leong*, the Leongs sought, *inter alia*, to avoid an arbitration provision in their Kaiser insurance plan by urging this court to declare the contract an adhesion contract. *Leong*, 71 Haw. at 247, 788 P.2d at 168. This court stated that:

> [A]n adhesion contract is a form contract created by the stronger of the contracting parties. It is offered on a "take this or nothing" basis. Consequently, the terms of the contract are imposed upon the weaker party who has no choice but to conform. These terms unexpectedly or unconscionably limit the obligations and liability of the drafting party. Because of these circumstances, *some courts look past the wording of the contract and consider the entire transaction in order to effectuate the reasonable expectations of the parties.*

*Id.* (emphasis added and citation omitted).

■ In the present case, neither an insurance contract nor another type of adhesion contract is involved. Although HIE contends that the Concession Agreement was offered on a "take this or nothing" basis, there is no evidence in the record to support such a contention. Moreover, there is no evidence to support HIE's contention that it "reasonably expected" section 25 to apply to City only as a third-party defendant.

Accordingly, because the plain language of section 25 clearly contemplates an award of attorneys' fees based on the facts presented, we cannot agree that the circuit court erred in awarding attorneys' fees to the City.

### B. *Viability of Bowler v. Board of Immigration*

■ Relying on *Bowler v. Board of Immigration*, 7 Haw. 715 (1889), HIE submits that "Hawai'i law has long recognized the principle that the government may not recover attorneys' fees."[3] Therefore, HIE urges reversal of the circuit court order granting attorneys' fees to the City.

In *Bowler*, this court refused to tax attorneys' fees against the government or an officer acting in its behalf under a general statute providing for the taxation of certain costs against the losing party in all actions of assumpsit. *Bowler*, 7 Haw. at 717. This court stated:

> [w]e think it a sound principle that where the Government *eo nomine*[4] is sued or brings a suit, or where a department or bureau or officer of the Government has brought suit or is sued concerning [a] matter which in fact is not personal, but involves a claim of the Government as plaintiff, or a liability of the Government as defendant, the plaintiff recovering should not have judgment for attorneys' fees or commissions, nor should the plaintiff on losing be taxed with attorney's fees and commissions on the amount sued for.

*Bowler*, 7 Haw. at 716 (footnote added). This court reasoned that:

> [t]he Government, when sued, should not be called upon to pay attorney's fees and commissions, any more than court costs, which finally go to the Treasury.... And if the Government should not pay these costs it should not exact them from others for the benefit of the Treasury. This has been the uniform practice in this Court, and we see no reason why it should be departed from.

*Id.* at 716–17.

The court's reasoning in *Bowler* is logically flawed. After noting that the government does not pay court costs because these costs go to the Treasury, the court concludes that the government should not be made to pay

---

**3.** *See also Lowery v. Territory*, 20 Haw. 112, 113 (1910) (declining to reverse *Bowler*).

**4.** *Eo nomine* is defined by Black's Law Dictionary as "under or by that name; by that appellation." Black's Law Dictionary 535 (6th ed. 1990).

attorneys' fees. The court failed, however, to recognize a critical difference between court costs and attorneys' fees. While court costs ultimately go to the Treasury, attorneys' fees paid by the government do not. Further, attorneys' fees may not be awarded as damages or costs unless so provided by statute, stipulation or agreement. *Food Pantry, Ltd. v. Waikiki Business Plaza, Inc.,* 58 Haw. at 618, 575 P.2d at 878 (citations omitted).

As noted, the court in *Bowler* stated that "[t]his has been the uniform practice in this court, and we see no reason why it should be departed from." *Bowler,* 7 Haw. at 717. To the extent that the practice recognized in *Bowler* is no longer the "uniform practice" of our courts today, we see no reason to adhere to the holding of *Bowler.* Currently, courts in Hawai'i regularly award attorneys' fees both in favor of and against various governmental entities. *See In re Tax Appeal of Hawaiian Flour Mills, Inc.,* 76 Hawai'i 1, 868 P.2d 419 (1994); *Montalvo v. Chang,.* 64 Haw. 345, 641 P.2d 1321 (1982); *City and County of Honolulu v. Bennett,* 2 Haw.App. 180, 627 P.2d 1136 (1981).

We also note that the Hawai'i State Legislature has implicitly rejected *Bowler* by the enactment of various statutes governing the award of attorneys' fees. For example, HRS § 607–14 governs the award of attorneys' fees "in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing" and does not limit an award of attorneys' fees to non-governmental parties. Act 200, § 1, 1993 Haw.Sess. Laws 482. In addition, HRS § 662–12 (1985) authorizes the court to award attorneys' fees against the State to prevailing parties under the State Tort Liability Act. *See Levy v. Kimball,* 51 Haw. 540, 465 P.2d 580 (1970).

Finally, we address the City's submission that it "might urge continued viability for *Bowler* where the City is acting in its governmental capacity, or litigating its government function." In other words, the City argues that *Bowler* should not be overruled to the extent that it prohibits recovery of attorneys' fees against a governmental entity if it is performing a governmental rather than proprietary function. However, the court in

*Bowler* did not distinguish the payment or taxing of attorneys' fees in terms of whether the government entity was functioning in a proprietary or governmental capacity.

Thus, the City relies on *Brink v. Hayes Branch Drainage Dist. of Douglas County,* 59 Ill.App.3d 828, 17 Ill.Dec. 185, 376 N.E.2d 78 (1978), and *Fischer v. Town of Albin,* 258 Minn. 154, 104 N.W.2d 32 (1960), to support its position. In *Brink,* a construction company brought suit against a drainage district (district) for balances allegedly due under a contract for channel improvements. 59 Ill. App.3d at 829–31, 17 Ill.Dec. at 185, 376 N.E.2d at 78. The district argued that the trial court erred in assessing costs against it. *Id.* at 833, 17 Ill.Dec. at 188, 376 N.E.2d at 81. The court stated that "[a]lthough it is true a municipal corporation is not liable for costs when acting in its governmental capacity, a municipality may be held responsible for costs when appearing in its private or proprietary capacity." 59 Ill.App.3d at 833, 17 Ill.Dec. at 188, 376 N.E.2d at 81 (citations omitted). Similarly, in *Fischer,* the court stated that "[t]he state cannot ordinarily be taxed for costs and disbursements when it acts in its sovereign capacity." 258 Minn. at 158, 104 N.W.2d at 35 (footnote deleted). As both *Brink* and *Fischer* involved costs and not attorneys' fees, we deem these cases to be inapposite.[5]

Based on the foregoing, we hold that *Bowler* is no longer viable to the extent that it prohibits recovery of attorneys' fees by or against a governmental entity.

### III. *CONCLUSION*

We affirm the circuit court's order awarding attorneys' fees to the City pursuant to section 25 of the Concession Agreement and HRS § 607–17. In addition, to the extent that this court's 104 year-old opinion in *Bowler* is contrary to our current practice of awarding attorneys' fees both in favor of and against government entities and the statutes that reflect this practice, *Bowler* is overruled.

---

5. We note that at least one jurisdiction has statutorily prohibited an award of attorneys' fees against a municipality. *See City of Dallas v. Arnett,* 762 S.W.2d 942, 951 (Tex.App.1988).