**ERNEZ LING WO LEONG**, a minor, by his Next of Friend, **JANE LEONG, ERNEST LEONG, JANE LEONG,** Plaintiffs–Appellants, v. **KAISER FOUNDATION HOSPI-TALS, HAWAII PERMANENTE MEDICAL GROUP, INC., KAISER FOUNDATION HEALTH PLAN, INC., PERMANENTE SERVICES OF HAWAII, INC., ESTATE OF VILIS KRUZE, M.D., STATE OF HAWAII, MAUI MEMORIAL HOSPITAL, A. C. PEAT, M. D., DOE ONE** through **DOE FIFTY,** inclusive, Defendants–Appellees

NO. 13671

(CIV. NO. 88–0280(1))

FEBRUARY 27, 1990

LUM, C.J., PADGETT, HAYASHI, AND
WAKATSUKI, JJ., AND RETIRED JUSTICE
NAKAMURA, ASSIGNED BY REASON
OF VACANCY

241

## OPINION OF THE COURT BY WAKATSUKI, J.

Chapter 87, Hawaii Revised Statutes (HRS) establishes the Public Employees Health Fund (Health Fund). One of the primary duties of the Health Fund is to contract with health insurance carriers for group health benefit plans for public employees. HRS § 87–22 (Supp. 1989). Individual public employees are given the option of enrolling in one of several group health care plans offered through the Health Fund.

Ernest Leong, an employee of the State of Hawaii in 1971, enrolled himself and his wife in the Kaiser Plan which provides comprehensive medical care and services exclusively through Kaiser affiliates.

On February 11, 1975, Ernez Ling Wo Leong was born to the Leongs and became a dependent–beneficiary member of the Kaiser Plan. The Leongs were active members of the Kaiser Plan from the 1971 enrollment through May 1982.

During June and July, 1975, Ernez received medical care and treatment through the Kaiser Plan for symptoms which were ultimately diagnosed as meningitis. Ernez is severely brain damaged with cerebral palsy, retardation, and compromise of intellectual and fine and gross motor functioning. The Leongs assert that Ernez's condition is a consequence of inadequate and substandard care and treatment by unqualified personnel at Kaiser.

On September 1, 1987, the Leongs filed a claim against Kaiser and others with the Medical Claims Conciliation Panel (MCCP). *See* Chapter 671, HRS. Not satisfied with the results of the hearing before the MCCP, the Leongs filed a complaint in the second circuit court alleging medical negligence and negligent hiring claims

against Kaiser Foundation Hospitals, Hawaii Permanente Medical Group, Inc., Kaiser Foundation Health Plan, Inc., Permanente Services of Hawaii, Inc., Estate of Vilis Kruze, M.D., A.C. Peat, M.D. (collectively Kaiser), the State of Hawaii, and Maui Memorial Hospital.

Kaiser sought to dismiss the complaint, or in the alternative, stay the action and compel arbitration. The Kaiser Plan provided for binding arbitration of "[a]ny claims for damages for personal injury. . . arising out of the rendition of or failure to render services under this contract[.]" The existence of the arbitration provision is not disputed. The Leongs contend, however, that they are not bound to arbitrate and instead are entitled to a jury trial.

The circuit court determined that the arbitration provision is binding on the Leongs, and thereby entered an order compelling arbitration. The Leongs appeal. We affirm.

I.

The Leongs argue that HRS § 658–3 (1985) entitles them to a jury trial. Section 658–3 provides in pertinent part:

**Compelling compliance with agreement; jury trial when.** A party aggrieved by the failure, neglect, or refusal of another to perform under an agreement in writing providing for arbitration, may apply to the circuit court for an order directing that the arbitration proceed in the manner provided for in the agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement or the failure to comply therewith is not in issue, the court hearing the application shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. If the making of the agreement or the default is in issue, the court shall proceed summarily to the trial thereof.

The Leongs read this statute as entitling them to a trial whenever a default is in issue; and a default, to them, is whenever there has been a breach of the contract. But "[t]he word 'default' used in the statute does not pertain to breach or default of performance undertaken in the contract in which an agreement to arbitrate is a covenant." *Gregg Kendall & Assocs., Inc. v. Kauhi*, 53 Haw. 88, 93, 488 P.2d 136, 140 (1971). As used in § 658–3, default means a failure to comply with the agreement to arbitrate. The "trial" referred to in HRS § 658–3 is limited to issues of whether the parties ever agreed to arbitrate or whether there is a default in compliance with such an agreement. *Association of Owners of Kukui Plaza v. Swinerton & Walberg Co.*, 68 Haw. 98, 107, 705 P.2d 28, 35 (1985); *Leeward Bus Co. v. City & County*, 58 Haw. 64, 72, 564 P.2d 445, 450 (1977); *Gregg Kendall & Assocs., Inc. v. Kauhi*, 53 Haw. at 93, 488 P.2d at 140.

The Leongs are entitled to a jury trial under HRS § 658–3 only if there are disputed factual issues relating to whether there is an enforceable agreement to arbitrate. When there are no factual issues to resolve, the inquiry is simply one of law. *Lecker v. General Am. Life Ins. Co.*, 55 Haw. 624, 626, 525 P.2d 1114, 1115 (1974).

Here, there are no facts in dispute, and therefore, the circuit court's ruling, as a matter of law, was proper.

II.

The Leongs present a host of arguments as to why the arbitration provision should not be enforceable against them. In *Madden v. Kaiser Foundation Hospitals*, 17 Cal. 3d 699, 131 Cal. Rptr. 882, 552 P.2d 1178 (1976), many of the same arguments were rejected by the California Supreme Court. We find the reasoning of the California Supreme Court in that case to be convincing.

## A.

The Leongs first contend that there was no agreement to arbitrate at the time the injury occurred in July 1975 because a contract for group health care benefits to be provided by Kaiser expired on June 30, 1975.

Prior to expiration, Kaiser and the Health Fund were renegotiating the contract. Negotiations, however, continued beyond June 30, 1975, and the new contract was not signed until September, 1975, and was made retroactive to July 1, 1975.

The retroactive provision notwithstanding, the Leongs argue that the arbitration provision cannot be enforceable due to the fact that the contract was not signed until after the occurrence of their alleged claims. This argument necessarily presumes that there was no contract at all at the time of the injury, yet the Leongs do not, and cannot, posit that argument since it is only under the contract that the Leongs were entitled to and received the medical services from Kaiser in June and July of 1975. They attempt to pick and choose for their benefit which provisions of the contract had or had not retroactive effect.

The Leongs also argue that the retroactivity of the arbitration provision would be unfair because the arbitration provision was unexpected and a surprise, yet it is undisputed that the Kaiser Plan contained the same arbitration provision since 1973.

## B.

The Leongs further argue that they should not be bound by the agreement to arbitrate because they had no actual knowledge of this provision in the contract.

The general rule of contract law is that one who assents to a contract is bound by it and cannot complain that he has not read it or did not know what it contained. 17 C.J.S. *Contracts* § 141, at

888 (1963); *Madden*, 17 Cal. 3d at 710, 131 Cal. Rptr. at 889, 552 P.2d at 1185; *accord Kapahua v. Hawaiian Ins. & Guar. Co.*, 50 Haw. 644, 447 P.2d 669 (1968).

Undeterred, the Leongs argue that the general rule is not applicable to them because the arbitration provision did not exist when Ernest initially enrolled in the Kaiser Plan in 1971, and the Leongs were not given actual notice of the amendment either in 1973 when the provision first went into effect, or during the contract period in question.

It is undisputed that Kaiser prepared a booklet summarizing the essential terms of the Plan for distribution to public employees covered by the Health Fund. The booklets included notice of the arbitration provision. Distribution of the booklets was the responsibility of the Health Fund. Affidavits were submitted attesting to the usual manner of distributing such information to all public employees and averring that the routine was adhered to at all times pertinent to this case. Despite the lack of any evidence contrary to the affidavits, the Leongs nevertheless insist that they failed to receive a copy of the booklet.

We hold that an averment that they did not receive the booklet, without more, is insufficient to negate a provision for binding arbitration contained in the contract. As the *Madden* court stated in a footnote:

> Apart from Plaintiff's own testimony, neither the Board nor Kaiser have any way of proving whether or not Plaintiff read all or part of that brochure. The orderly administration of the plan would be impossible if it were to depend on such proof.

*Madden*, 17 Cal. 3d at 709, 131 Cal. Rptr. at 888, 552 P.2d at 1184.

The Leongs attempt to distinguish this case from *Madden* by pointing out that in *Madden*, there was evidence that the brochure was mailed to the plaintiff by the defendant. Leongs argue that the standard established by *Madden* was not met in view of the fact that Kaiser did not take responsibility for the distribution, and the

distribution was not done by mailing. We are not convinced that in *Madden* such a standard was established nor given significant emphasis. [1]

## C.

The Leongs next seek to avoid the arbitration provision by urging this court to declare the contract for the Kaiser Plan as an adhesion contract, and therefore, the contract should be enforced in favor of the Leongs. We disagree.

> An adhesion contract is a form contract created by the stronger of the contracting parties. It is offered on a "take this or nothing" basis. Consequently, the terms of the contract are imposed upon the weaker party who has no choice but to conform. These terms unexpectedly or unconscionably limit the obligations and liability of the drafting party. Because of these circumstances, some courts look past the wording of the contract and consider the entire transaction in order to effectuate the reasonable expectations of the parties.

*Robin v. Blue Cross Hosp. Serv., Inc.*, 637 S.W.2d 695, 697 (Mo. 1982) (citations omitted).

The Kaiser Plan is a product of negotiations between the Health Fund and Kaiser, parties possessing equal bargaining power. Although the Leongs did not personally participate in the bargaining, their interests were represented by the trustees of the Health Fund, and they benefited by the collective bargaining

---

[1] It is not clear in the *Madden* decision whether the brochure was addressed to the plaintiff individually. Apparently, the brochure was mailed to the plaintiff's place of employment, and not her home because the plaintiff had argued that she had been absent from work due to illness during the time of the mailing, and, therefore, did not receive the brochure. We see no significant difference between the distribution procedures employed in *Madden* and this case.

strength of the Health Fund in securing medical care and services on more favorable terms than any individual employee could have negotiated. *Robin*, 637 S.W.2d at 697; *Madden*, 17 Cal. 3d at 711, 131 Cal. Rptr. at 889, 552 P.2d at 1185.

In contracts of adhesion, courts are concerned with terms which are oppressive to the weaker party and which serve to limit the obligations and liability of the stronger party. *Robin*, 637 S.W.2d at 697; *Madden*, 17 Cal. 3d at 711, 131 Cal. Rptr. at 889, 552 P.2d at 1186. The arbitration provision, however, "bears equally on Kaiser and the members. It does not detract from Kaiser's duty to use reasonable care in treating patients, nor limit its liability for breach of this duty, but merely substitutes one forum for another." *Madden*, 17 Cal. 3d at 711, 131 Cal. Rptr. at 890, 552 P.2d at 1186.

### D.

The final significant issue in this appeal is whether a binding arbitration provision can be enforced against a minor under HRS Chapter 658. The Leongs contend that HRS § 658–2 (1985) allows Emez, a minor, to disaffirm the contract requiring arbitration.

HRS § 658–2 (1985), in pertinent part, provides:

> **Agreement to submit existing controversy.** *Save in the case of an infant*, or a person incompetent to manage the person's affairs, two or more persons may agree in writing to submit to the arbitration of one or more arbitrators any controversy existing between them[.] [Emphasis added.]

In *Doyle v. Giuliucci*, 62 Cal. 2d 606, 43 Cal. Rptr. 697, 401 P.2d 1 (1965), the plaintiff's father entered into a contract for group medical services which included care and service to dependents. When the plaintiff and his father filed a medical malpractice suit, the defendant medical group demanded arbitration. The plaintiff argued that the California statute allows minors to

disaffirm contracts, therefore, the plaintiff could disaffirm the contract requiring arbitration.

Pointing out that the contract was entered into between adults (the plaintiff's father and the defendant medical group), the California court held that a parent had the power to bind his child to arbitration by entering into a contract of which the child is a third party beneficiary. The court stated:

> The crucial question . . . is whether the power to enter into a contract for medical care that binds the child to arbitrate any dispute arising thereunder is implicit in a parent's right and duty to provide for the care of his child. There are compelling reasons for recognizing that power. Since minors can usually disaffirm their own contracts to pay for medical services, it is unlikely that medical groups would contract directly with them. They can be assured the benefits of group medical service only if parents can contract on their behalf. Unless such contracts unreasonably restrict minors' rights, they should be sustained. [ ¶ ] The arbitration provision in such contracts is a reasonable restriction, for it does no more than specify a forum for the settlement of disputes.

*Doyle*, 62 Cal. 2d at 610, 43 Cal. Rptr. at 699, 401 P.2d at 3.

We concur with the reasoning of *Doyle*. Here, Ernest Leong, an adult, entered into the contract which provided his minor son with medical care and services as a third party beneficiary. Therefore, we hold, as a matter of public policy, that HRS § 658–2 does not allow Ernez, a minor, to disaffirm the arbitration provision in the contract.

Furthermore, "the proclaimed public policy of our legislature [is] to encourage arbitration as a means of settling differences and thereby avoid litigation." *Association of Owners of Kukui Plaza v. Swinerton & Walberg Co.*, 68 Haw. at 107, 705 P.2d at 35

(quoting from *Gregg Kendall & Assocs., Inc. v. Kauhi*, 58 Haw. at 93, 488 P.2d at 140).

### III.

We hold that Leongs' other contentions are without merit. Affirmed.

*Scott D. Righthand* (*James S. Bostwick* on the briefs of Bostwick and Tehin) for Plaintiffs–Appellants.

*Mary A. Wilkowski* (*Richard K. Quinn* and *Rodney W. Williams* on the brief) for Defendants–Appellees Kaiser Foundation Hospitals, Hawaii Permanente Medical Group, Inc., Kaiser Foundation Health Plan, Inc., Permanente Services Of Hawaii, Inc., Estate of Vilis Kruze, M.D., and A. C. Peat, M.D.

On the Amicus Curiae Brief:

*Mark S. Davis* (Davis & Levin) for Hawaii Academy of Plaintiffs Attorneys.