Walter L. **BRANCO**, et al., Plaintiffs,

v.

**NORWEST BANK MINNESOTA, N.A., Etc., et al., Defendants.**

**No. CV 02–00468 DAE–LEK.**

United States District Court, D. Hawai'i.

July 27, 2005.

Andrew S. Iwashita, Hilo Law Center, Hilo, HI, George J. Zweibel, Law Office of

George J. Zweibel, Honokaa, HI, for Walter L. Branco, Walter L. Branco, as Personal Administrator of the Estate of Elizabeth A. Branco, Elizabeth A. Branco, plaintiffs.

Kurt K. Leong, Jason F. Oliver, Oliver Lau Lawhn Ogawa & Nakamura, Roy T. Ogawa, Oliver Lau Lawhn Ogawa & Nakamura, Honolulu, HI, for Norwest Bank Minnesota, N.A., as Trustee for Amresco Residential Securities Corporation Mortgage Loan Trust 1998–2, Under the Pooling and Servicing Agreement dated as of June 1, 1998, a Minnesota corporation aka Wells Fargo Bank Minnesota, N.A., Wendover Financial Services Corporation, Attorneys Equity National Corporation, John and Mary Does 1–20, John Doe Partnerships 1–20, Doe Corporations 1–20, Doe Other Entities 1–20, defendants.

*ORDER AFFIRMING MAGISTRATE JUDGE'S ORDER GRANTING DEFENDANT ATTORNEYS EQUITY NATIONAL CORPORATION'S MOTION TO STAY PROCEEDINGS AND TO COMPEL ARBITRATION AND DENYING PLAINTIFFS' MOTION TO SET SUMMARY JURY TRIAL TO DETERMINE EXISTENCE OF AGREEMENT TO ARBITRATE.*

DAVID ALAN EZRA, Chief Judge.

Pursuant to Local Rule 7.2(d), the Court finds this matter suitable for disposition without a hearing. On October 4, 2004, Plaintiffs filed objections to the magistrate judge's July 29, 2004 Finding and Recommendation Order. After reviewing Plaintiffs' objections as well as all supporting and opposing memoranda the Court AFFIRMS the magistrate judge's Order.

## BACKGROUND

The facts of this case have been set forth in previous documents filed by the Court. *See* Finding and Recommendation, pp. 2–5; Am. Order Granting in Part and Denying in Part Def. Attorneys Equity's Mot. to Dismiss, filed Feb. 12, 2003, pp. 2–7. In short, Plaintiffs entered into a loan agreement with Amresco Residential Mortgage Company (Amresco) in March 1998. As part of this transaction, Amresco acquired a mortgage on lot # 83, Paauilo Mauka Camp, Paauilo, Hawaii, which Plaintiffs use as their principal dwelling. Plaintiffs brought the underlying suit against Amresco, as well as numerous other Defendants,[1] alleging, *inter alia,* violations of consumer protection statutes. The instant matter revolves around an arbitration clause within the loan agreement.

On January 22, 2004, Defendant Attorneys Equity filed a Motion to Compel Arbitration, in which Defendants Wells Fargo and Wendover joined on January 26, 2004.[2] On January 30, 2004, by Order of Designation to a Magistrate Judge, this Court assigned the Motion to Compel Arbitration to the magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B) (2000) and Local Rule 72.4.

On February 12, 2004, Plaintiffs filed a Motion for Summary Jury Trial on the issue of whether an arbitration agreement exists between the parties. The magistrate judge treated the motion as a coun-

---

1. Defendants include Amresco; Wells Forago Bank Minnesota, N.A., formerly known as Norwest Bank Minnesota, National Association, as trustee for Amresco Residential Securities Corporation Mortgage Loan Trust 1998–2, under the pooling and servicing agreement dated as of June 1, 1998 (Wells Fargo), Attorneys Equity National Corporation (Attorneys Equity), Wendover Financial Services (Wendover), and Doe Defendants.

2. Originally, Defendant Attorneys Equity was represented by different counsel than its co-defendants. All Defendants are now represented by the same counsel.

ter-motion to Defendants' Motion to Compel Arbitration.

On July 29, 2004, the magistrate judge filed her Order granting Defendants' Motion to Compel Arbitration and denied Plaintiffs' Motion for Summary Jury Trial. In that Order, the magistrate judge found Defendants' motion was timely filed, the agreement to arbitrate was not unconscionable, and Plaintiffs' defense that the contract as a whole was void *ab initio* was barred by the statute of limitations.

On August 12, 2004, Plaintiffs filed a Motion for Reconsideration of the Magistrate's Order, which the magistrate judge denied by Order on September 20, 2004. Plaintiffs filed their objections to the September 20 Order on October 4, 2004. On October 14, 2004, Defendants filed a response to Plaintiffs' objections, as well as limited Cross–Objections to the September 20 Order, seeking clarification on two issues.

### STANDARD OF REVIEW

■ Any party may object to a magistrate judge's order within eleven calendar days following service of the order. 28 U.S.C. § 636(b)(1)(B) (2000); Fed.R.Civ.P. 72(b); Local Rule 74.1. The district court review *de novo* those portions of the magistrate judge's report to which objection is made, and may accept, reject or modify, in whole or in part, the findings and recommendations. 28 U.S.C. § 636(b)(1)(B) (2000); Fed.R.Civ.P. 72(b); Local Rule 74.1. *De novo* review means the court must consider the matter anew, the same as if it had not been heard before and as if no decision previously had been rendered. *Ness v. Commissioner,* 954 F.2d 1495, 1497 (9th Cir.1992). Thus, although the district court need not hold a *de novo* hearing, the court's obligation is to arrive at its own independent conclusion about those portions of the magistrate judge's findings and recommendation to which ob-

jections are made. *United States v. Remsing,* 874 F.2d 614, 617 (9th Cir.1989).

### DISCUSSION

The Federal Arbitration Act (FAA), states "[a] written provision in any maritime transaction or a contract evidencing a transaction involving commerce ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2 (2000). Based on the strong federal policy favoring arbitration agreements, the United States Supreme Court has directed courts to resolve allegations of waiver, delay or similar defenses to arbitrability in the favor of arbitration. *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

Under the FAA, in deciding whether to compel arbitration, the court must determine: (1) whether a valid, enforceable arbitration agreement exists, and (2) whether the claims asserted in the complaint are within the scope of the arbitration agreement. 9 U.S.C. § 4; *Chiron Corp. v. Ortho Diagnostic Systems, Inc.,* 207 F.3d 1126, 1131 (9th Cir.2000); *Howard Elec. & Mech. Co. v. Frank Briscoe Co.,* 754 F.2d 847, 849 (9th Cir.1985). Neither party objected to the magistrate judge's finding and recommendation regarding the scope of the arbitration agreement; thus, this Court will not review that issue.

Plaintiffs object to the magistrate judge's finding that Defendants timely filed their Motion to Compel Arbitration as well as to the finding that a valid and enforceable arbitration agreement exists. Specifically, Plaintiffs argue that the arbitration agreement is voidable, because it is procedurally and substantively unconscionable, and that the underlying loan contract is void *ab initio,* because the procedures

used to form the contract violate consumer protection statutes.

### I. OBJECTIONS TO THE MAGISTRATE JUDGE'S FINDING OF TIMELINESS:

In light of the strong policy favoring arbitration, waiver by a party of its right to arbitrate is not to be inferred lightly. *Vespe Contracting Co. v. Anvan Corp.*, 399 F.Supp. 516, 522 (D.C.Pa.1975). Failure to raise an arbitration agreement as an affirmative defense is not a binding waiver of the right to arbitrate. *Thyssen, Inc. v. Calypso Shipping Corp.*, 310 F.3d 102, 105–106 (2d Cir.2002). Absent prejudice to the non-moving party, an affirmative defense may be asserted for the first time in a motion, as Defendants have done here. *Ledo Fin. Corp. v. Summers*, 122 F.3d 825, 827 (9th Cir.1997); *Hoffman Constr. Co. of Or. v. Active Erectors & Installers, Inc.*, 969 F.2d 796, 798–99 (9th Cir.1992).

Plaintiffs argue that a Motion to Compel Arbitration is a *de facto* motion to amend the pleadings and, therefore, Defendants' motion was untimely. The Rule 16 Scheduling Order deadline to file dispositive motions was April 28, 2004. Defendants filed their Motion to Compel Arbitration on January 22, 2004, which was well within the deadline. The Court finds that, even if the motion is construed to be a *de facto* motion to amend the pleadings, the Court was nonetheless within its discretion to hear the motion. The district courts have broad discretion in interpreting, applying, and determining the requirements of their own local rules and general orders. *United States v. Gray*, 876 F.2d 1411, 1414 (9th Cir.1989), *cert. denied*, 495 U.S. 930, 110 S.Ct. 2168, 109 L.Ed.2d 497 (1990) (citing *United States v. DeLuca*, 692 F.2d 1277, 1281 (9th Cir.1982); *United States v. Torbert*, 496 F.2d 154, 157 (9th Cir.1974)). Despite this general principle of discretion, the Federal Rules of Civil Procedure require, in relevant part:

> [e]xcept in categories of actions exempted by district court rule as inappropriate, the district judge, or a magistrate judge when authorized by district court rule, shall ... enter a scheduling order that limits the time ... to file motions.... *A schedule shall not be modified except upon a showing of good cause and by leave of the district judge or, when authorized by local rule, by a magistrate judge.*

Fed.R.Civ.P. 16(b) (emphasis added). In determining whether a moving party has shown the requisite good cause, the inquiry primarily considers the diligence of that party. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir.1992); *United States v. Boyce*, 148 F.Supp.2d 1069, 1078 (S.D.Cal.2001); *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607 (E.D.Cal.1999).

Accepting Plaintiffs' assertions for the sake of argument, the Court does not find that when Defendants complied with the dispositive motions deadline they should clearly have known that their filing would be untimely. As such, the Court finds no lack of diligence on their part, and finds that there would exist good cause to allow the motion to be heard, even if it was untimely.

### II. OBJECTIONS TO THE MAGISTRATE JUDGE'S FINDING OF A VALID, ENFORCEABLE, WRITTEN ARBITRATION AGREEMENT:

Plaintiffs argue the arbitration agreement is unenforceable based on the doctrine of unconscionability. Plaintiffs claim the agreement is procedurally unconscionable because it is a contract of adhesion, and is substantively unconscionable because it includes a "loser pays" provision

and because it requires Plaintiffs to pay prohibitive costs to vindicate their claims.

Plaintiffs also argue the underlying loan contract is void for violations of Hawaii's consumer protection statutes. Plaintiffs had already raised this argument as an affirmative claim in their First Amended Complaint, and it was dismissed based on the statute of limitations. But, Plaintiffs contend the statute of limitations does not bar them from raising this argument now as an affirmative defense.

### A. The contract is not unconscionable.

Unconscionability is a form of redress available when one party abuses a strong bargaining position to take advantage of the other party's weakness, ignorance, or distress. To find a contract voidable on the grounds of unconscionability, most courts, including those in Hawaii, require a showing of both a procedural and substantive element of unconscionability. *Brown v. KFC Nat'l Mgmt. Co.*, 82 Hawai'i 226, 921 P.2d 146, 167 (1996) ("[A] contract ... is unenforceable if two conditions are present: (1) the contract is the result of coercive bargaining between parties of unequal bargaining strength; and (2) the contract unfairly limits the obligations and liabilities of, or otherwise unfairly advantages, the stronger party."). *See also City & County of Honolulu v. Midkiff*, 62 Haw. 411, 616 P.2d 213, 218 (1980); *Earl M. Jorgensen Co. v. Mark Constr., Inc.*, 56 Haw. 466, 540 P.2d 978, 984 (1975). Thus, inequality in bargaining power alone will not render an arbitration agreement unconscionable. *Gilmer v. Interstate/Johnson Corp.*, 500 U.S. 20, 33, 111 S.Ct. 1647, 114 L.Ed.2d 26 (1991).

If an agreement is found unconscionable, Hawaii law grants the courts discretion in applying remedies. *See* Haw.Rev.Stat. § 490:2–302(1) (2002) ("[T]he court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.").

The magistrate judge correctly found the loan agreement was not a contract of adhesion and was not procedurally unconscionable. A contract of adhesion is one in which a party uses its superior market power to force the other party into a one-sided contract on a "take it or leave it" basis. *Brown*, 921 P.2d at 167. Arbitration agreements are not usually considered contracts of adhesion, because while they may meet the procedural element of unconscionability, they generally do not meet the substantive element of unconscionability. *Leong v. Kaiser Found. Hosp.*, 71 Haw. 240, 788 P.2d 164, 169 (1990). Arbitration agreements usually do not limit the obligations or liabilities of either party, but simply substitute one forum for another. *Id.*

A finding of procedural unconscionability revolves around a showing of two factors—oppression and surprise. *Ferguson v. Countrywide Credit Indus., Inc.* 298 F.3d 778, 783 (9th Cir.2002). "'Oppression' arises from inequality of bargaining power which results in no real negotiation and an absence of meaningful choice. 'Surprise' involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms." *Id.* (quoting *Stirlen v. Supercuts, Inc.*, 51 Cal. App.4th 1519, 60 Cal.Rptr.2d 138, 145 (1997).

As Defendants note, Hawaii Intermediate Appellate Court found in a recent summary disposition order that as a matter of law, a mortgage was not a contract of adhesion. The court reasoned that, "[c]onsidering the overall process of contract formation in this case ... it is abundantly

clear that the [plaintiffs] were not 'forced to apply for [a mortgage loan] from [lender]' ... amidst the myriad of mortgage lenders we notice were available to them." *Pascua v. U.S. Bank Nat'l Assen*, No. 25596, 2004 WL 2181784 (Haw.App.2004). In other words, Plaintiffs were not subjected to "oppression" or a lack of all meaningful choice because they were negotiating in a market place with competing lenders.

The *Pascua* decision reflects a modern approach to consumer contracts. "Consumers always have the option to refuse the services or products connected to binding arbitration. The consumer is free to put down the pen without signing the form.... A consumer who contracts in such circumstances does so voluntarily." Ware, *Consumer Arbitration as Exceptional Consumer Law*, 29 McGeorge L.Rev. 195, 201 (1998).

Here, Plaintiffs also were not "oppressed" or left without any meaningful choice in the matter: they could have refused Defendants' terms and chosen to transact business with a different lender. Nor were the terms of the resulting contract "surprising." Plaintiffs admit they did not read the three-page contract before signing it. If they had, they would have found the arbitration clause was not "hidden in the prolix printed form." The clause appears directly above the signature line and is the only section of the contract that is printed in all capital letters. Because neither factor of oppression or surprise is present in Plaintiffs' transaction, the arbitration agreement is not procedurally unconscionable.

■ Nor is the agreement substantively unconscionable. Substantive unconscionability focuses on the terms of the resulting contract and will be found when, because of unfair and coercive bargaining, the contract includes unfair terms that are unreasonably harsh or that favor one of the parties more than should be reason-

ably expected, given the commercial context in which the contract was made. Comments to Haw.Rev.Stat. § 490:2–302 (2002). The Comments to Section 490:2–302 of the Hawaii Revised Statutes explain that the doctrine of unconscionability seeks to prevent oppression of weaker parties, not to disturb the allocation of risks because of superior bargaining power.

Plaintiffs disagree with the magistrate judge's finding that the arbitration agreement neither contains unfair terms nor unfairly favors Defendants. Plaintiffs contend the arbitration agreement's "loser pays" provision, which allows the prevailing party to collect attorneys' fees and costs, is an unfair term because it essentially re-writes the attorney fees provisions of the consumer protection statutes on which Plaintiffs' claims are based. Plaintiffs also argue the costs of arbitration prohibit them from fully vindicating their statutory claims, and therefore the agreement is unconscionable.

■ A "loser pays" provision does not render an arbitration agreement unenforceable. *Thompson v. Irwin Home Equity Corp.*, 300 F.3d 88, 91–92 (1st Cir. 2002). If, however, a provision within the arbitration agreement deprives a party of a statutory right, the agreement will be unenforceable. *Graham Oil Co. v. ARCO Prods. Co.*, 43 F.3d 1244, 1247–48 (9th Cir.1994). Under the arbitration agreement here, the prevailing party is entitled to collect attorneys' fees and costs. Plaintiffs contend that because the arbitration agreement also allows either Plaintiffs or Defendants to recover attorneys' fees and costs, and the Hawaii consumer protection statutes allow only a successful plaintiff to recover fees and costs, the agreement conflicts with the legislative intent behind the consumer protection statutes.

■ The FAA requires rigorous enforcement of agreements to arbitrate.

*Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 221, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985). *See also Moses H. Cone Mem. Hosp. v. Mercury Const. Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1985). Under the FAA, the party opposing arbitration carries the heavy burden of proving the provision in question inherently conflicts with the underlying purposes of a statute. *Shearson/American Express v. McMahon,* 482 U.S. 220, 226–227, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987) (reversed on other grounds).

Plaintiffs attempt to carry this burden by citing *Broughton v. Cigna Healthplans,* 21 Cal.4th 1066, 90 Cal.Rptr.2d 334, 988 P.2d 67 (1999). *Broughton,* however, does not hold that "loser pays" provisions inherently conflict with the underlying purposes of consumer protection statutes. Instead, *Broughton,* holds that injunctive relief claims brought under the Consumer Legal Remedies Act (CLRA), a California deceptive practices statute, are not arbitrable because (1) the relief sought is for the general public rather than the party bringing the action, and (2) the judicial forum has significant institutional advantages over the arbitral forum in enforcing injunctive relief.[3] 90 Cal.Rptr.2d 334, 988 P.2d at 78. Thus, Plaintiffs have failed to prove that the "loser pays" provision in their arbitration agreement undermines Congressional intent and, therefore, the agreement is not substantively unconscionable based on this provision.

 Plaintiffs also argue the arbitration agreement is substantively uncon-

scionable because it requires them to pay prohibitive costs to vindicate their statutory claims. Where a party seeks to invalidate an arbitration agreement because of potentially prohibitive costs, that party bears the burden of showing the likelihood of incurring such costs. *Green Tree Fin. Corp. v. Randolph,* 531 U.S. 79, 91–92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000).

Here, Plaintiffs' allegedly prohibitive costs are speculative. The agreement states the arbitration will be administered pursuant to the American Arbitration Association's (AAA) rules. Rule R–1 of those rules states:

> The AAA applies the *Supplementary Procedures for Consumer–Related Disputes* to arbitration clauses in agreements between individual consumers and businesses where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are nonnegotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices.

*See* American Arbitration Association, *Commercial Arbitration Rules & Mediation Procedures,* Jul. 1, 2003, *available at* WL AAA Arb. Rules.

Thus, the Supplementary Procedures for Consumer–Related Disputes would apply to this dispute. According to these rules:

> Administrative fees are based on the size of the claim and counterclaim in a dispute. They are based only on the actual damages and not on any additional damages, such as attorneys' fees or

---

**3.** The *Broughton* court also held that CLRA damages claims *are* arbitrable. *Id.* at 79. ("[S]tatutory damages claims are fully arbitrable. Such an action is primarily for the benefit of a party to the arbitration, even if the action incidentally vindicates important

public interests…We therefore interpret the CLRA as permitting arbitration of damages claims."). Therefore, because Plaintiffs are seeking damages under the Hawaii deceptive damages statutes, *Broughton* actually weakens Plaintiffs' case.

punitive damages. If the consumer's claim or counterclaim is greater than $10,000, but does not exceed $75,000, then the consumer is responsible for one-half the arbitrator's fees up to a maximum of $375. This deposit is used to pay the arbitrator. It is refunded if not used. If the consumer's claim or counterclaim exceeds $75,000, or if the consumer's claim or counterclaim is nonmonetary, then the consumer must pay an Administrative Fee in accordance with the Commercial Fee Schedule. A portion of this fee is refundable pursuant to the Commercial Fee Schedule. The consumer must also deposit one-half of the arbitrator's compensation.

*See* American Arbitration Association, *Commercial Arbitration Rules & Mediation Procedures,* Jul. 1, 2003, *available at* WL DCMLARB APP F–22. The fee schedule has an initial filing fee of $1500 and a case service fee of $750. *Ibid.* In cases where an AAA administrative fee applies, parties are eligible for consideration for a waiver or deferral of the administration fee if their annual gross income falls below 200% of the federal poverty guidelines. *See* American Arbitration Association, *Administrative Fee Waivers and Pro Bono Arbitrators Services* (Jul. 1, 2003), *available at* http://www.adr.org. The guidelines state that for a single-member household, the applicant must earn less than $19,780. *Id.* For a two-member household, the member must make less than $26,780. *Id.* Plaintiffs' income is $24,816. Second Decl. of Walter L. Branco at ¶ 5, Mar. 2, 2004. Mr. Branco's declaration further states Plaintiff Elizabeth Branco is deceased, but provides no information regarding the size of Plaintiffs' household. *Id.* at ¶ 7. For instance, Plaintiffs say they obtained a loan from Defendants to help pay for their son's college expenses. Decl. of Walter L. Branco at ¶ 8, Feb. 9, 2004. The Court has no way of determining whether this son is a depen-

dent or if Plaintiff Walter Branco has any other dependents. Thus, it is speculative whether Plaintiffs may apply for a waiver of fees.

■ Further, even if Plaintiffs do not qualify for a waiver of fees, they may still request pro bono arbitration services:

> Even if no waiver or deferral of administrative fees has been granted or requested, a party may make a request for a pro bono or reduced rate arbitrator at the time of the filing of the case or at any time up to the point that an arbitrator is appointed. However, prior to appointment every effort is made to have the non-indigent party agree to pay the arbitrators fees. While we cannot guarantee the appointment of a pro bono or reduced rate arbitrator, we will make every effort to accommodate the request.

*See* American Arbitration Association, *Administrative Fee Waivers and Pro Bono Arbitrators Services* (Jul. 1, 2003), *available at* http://www.adr.org. Because the Court cannot determine whether Plaintiffs would receive arbitration fee waivers or pro bono services, the Court cannot determine whether Plaintiffs' costs in arbitrating their claims are prohibitive. Accordingly, Plaintiffs' alleged prohibitive costs are speculative. Notwithstanding the potential for prohibitive costs, Plaintiffs argument is moot because Defendants have offered to pay whatever fees necessary to find the arbitration agreement enforceable. *See* Def.'s 2d Supplemental Mem. in Supp. of Joinder in Def. Attorneys Equity National Corp.'s Mot. to Stay Proceedings and to Compel Arbitration, p. 13, filed Apr. 27, 2004. Thus, the arbitration agreement is not substantively unconscionable based on prohibitive costs.

To avoid any question of substantive unconscionability in the arbitration agreement, the magistrate judge allowed Defen-

dants to agree to pay the arbitration costs that Plaintiffs argued were prohibitive. Yet, Plaintiffs object, arguing the Court should not re-write the arbitration clause to rescue the Defendants from an unconscionable arbitration agreement. First, as explained above, the arbitration agreement is not unconscionable. Second, Plaintiffs' argument contradicts the plain language of Section 490:2–302(1) of the Hawaii Revised Statutes.[4] Finally, the Ninth Circuit Court of Appeals has held that unconscionable clauses are severable. *See Circuit City Stores v. Adams,* 279 F.3d 889, 895 (9th Cir.2002) (in evaluating California Civil Code Section 1670.5(a), the California equivalent of Haw.Rev.Stat. § 490:2–302, the court stated, "[C]ourts have discretion to sever an unconscionable clause.").

Plaintiffs claim, however, that § 490:2–302(1) only applies to the sale of goods and therefore is inapplicable in this case. Again, Plaintiffs are wrong. Hawaii courts have used this statute as a guideline for non-UCC cases dealing with the issue of unconscionability. *See e.g., Leong v. Kaiser Found. Hosp.,* 71 Haw. 240, 788 P.2d 164, 168 (1990). The statute can properly be used for the same purpose in this case.

In conclusion, the arbitration agreement is not unconscionable. Defendants used their market power to offer Plaintiffs a standard form contract that included an arbitration agreement. Plaintiffs could have refused Defendants' offer and used a different lender; however, Plaintiffs chose to accept the offer and the terms. The standard form terms were set out clearly and neither disadvantage Plaintiffs nor advantaged Defendants. Yet, to assure the agreement was not even questionably unconscionable, the magistrate judge allowed

Defendants to pay the bulk of the arbitration costs. For all of these reasons, the Court AFFIRMS the magistrate judge's finding that the arbitration agreement was not unconscionable.

### B. *The contract is not void ab initio.*

■ Plaintiffs object to the magistrate judge's finding that the statute of limitations bars their defense that the loan agreement itself is void *ab initio.* Plaintiffs initially raised the void contract argument as an affirmative claim in their First Amended Complaint. The Court dismissed that claim because it was barred by the statute of limitations. The Court stated:

> The Court will not grant Plaintiffs leave to amend Count I of the First Amended Complaint; however, the Court clarifies that this determination is made without prejudice to raising this argument in other contexts or actions, including as a defense to judicial proceedings initiated by Defendants, should other courts permit Plaintiffs to make such arguments.

*See* Order Granting and Denying in Part Def.'s Wendover and Wells Fargo's Mot. for Partial Dismissal of the First Am. Compl. ¶ 4, filed Jul. 2, 2003.

The magistrate judge found that the Order of July 2 specifically precluded the void contract defense in the instant case. Plaintiffs contend that the magistrate judge's reading of the order is too literal. If the Court were to interpret the Order of July 2 as Plaintiffs suggest, however, the phrase "should other courts permit Plaintiffs to make such arguments" would have no meaning. Such an interpretation violates a basic canon of construction that

---

4. "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, *or it may enforce the remainder of the contract without the unconscionable clause,* or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." Haw.Rev.Stat. § 490:2–302(1) (emphasis added).

interpretations rendering any part of the text superfluous should be avoided. *Compare Cooper Industries, Inc. v. Aviall Services, Inc.*, 543 U.S. 157, 125 S.Ct. 577, 584, 160 L.Ed.2d 548 (2004) ("[The Court] must, if possible, construe a statute to give every word some operative effect."); *Boise Cascade Corp. v. United States E.P.A.*, 942 F.2d 1427, 1432 (9th Cir.1991) ("[The Court must] interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.").

Here, even if Plaintiffs' interpretation of the Order of July 2 is correct, their void contract defense still would be barred. Courts allow defenses that would be time-barred if raised as claims, so long as the party asserting the defense is not seeking affirmative recovery on an identical claim. *City of St. Paul v. Evans*, 344 F.3d 1029, 1035 (9th Cir.2003). "Thus, whether affirmative defenses are exempt from statutes of limitations largely hinges on a realistic assessment of the parties' litigation purposes." *Id.*

In *City of St. Paul*, the City filed a suit seeking declaratory judgment on the invalidity of a settlement agreement it had entered into eight years earlier with a Native American corporation. In particular, the City claimed the agreement violated a city ordinance and the Alaska Open Meetings Act. The corporation filed a counterclaim seeking to enforce the settlement. *Id.* at 1030.

The court held the six year statute of limitation barred the City from asserting its claims as affirmative defenses to the corporation's counterclaims because the City was the aggressor in the situation and "disturbed the equilibrium between the parties" by filing their suit challenging the settlement agreement. *Id.* at 1035. The court found that the corporation's claims

were filed in response to the City's claims and not for affirmative relief. *Id.* The City's defenses to those claims were the exact same as their affirmative claims for relief. *Id.* ("[N]o matter what gloss the City puts on its defenses, they are simply time-barred claims masquerading as defenses and are likewise subject to the statute of limitations bar.").

Here, Plaintiffs' void contract defenses are the same as their affirmative claims for relief. Plaintiffs are the aggressors in this litigation and brought the suit trying to invalidate the contract. Their affirmative claim that the contract is void *ab initio* was barred by the statute of limitations. Plaintiffs cannot circumvent this bar by now raising the identical argument as a defense to Defendants' response to the suit Plaintiffs initiated.

After declaring Plaintiffs' defense was time-barred, the magistrate judge nevertheless addressed the merits of the defense in the interest of justice. Accordingly, this Court will also briefly address the merits and finds that even if Plaintiffs' defense was not time-barred, it would be moot. As Defendants point out, all of Plaintiffs' allegations regarding deceptive business practices involve Pacific Star Mortgage and its representative, Leroy Alip, who was Plaintiffs' mortgage broker. Section 454–1 of Hawaii Revised Statutes explains that mortgage brokers represent the borrower, not the lender. *See Beneficial Hawaii, Inc. v. Kida*, 96 Hawai'i 289, 30 P.3d 895, 914–915 (2001) ("[T]he legislature inserted the language 'on behalf of the borrower' to 'clarify' that the statute did not apply to 'brokers' contracts with investors, including the suppliers of funds used to make the loan."). Plaintiffs have failed to show how their broker's deceptive practices should invalidate their loan agreement with Defendants; especially considering neither Pacific Star nor Alip is

presently a named defendant in the suit. Accordingly, this Court AFFIRMS the magistrate judge's finding that Plaintiffs' void contract defense is both meritless and barred by the statute of limitations.

### III. *DEFENDANTS' REQUEST FOR CLARIFICATION*

The Court acknowledges the facts set out here, in the findings and recommendations and in the order granting in part and denying in part the motion to dismiss are only the facts as alleged by the Plaintiffs in the complaint and have not been adjudicated as findings of facts.

The Court also acknowledges that on March 15, 2004 Defendants Wendover and Wells Fargo filed a reply memorandum in support of their joinder in Defendant Attorneys Equity's Motion to Arbitrate.

### CONCLUSION

For the reasons stated above, the Court AFFIRMS the Magistrate Judge's Finding and Recommendation.

IT IS SO ORDERED.